**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 95-5615

JAMES MCQUEEN,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CR-94-291)

Argued: December 6, 1996

Decided: March 6, 1997

Before RUSSELL and MOTZ, Circuit Judges, and MICHAEL,
Senior United States District Judge for the Western District of
Virginia, sitting by designation.

_____

Vacated and remanded by published opinion. Judge Russell wrote the
opinion, in which Judge Motz and Senior Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Michael Smith Scofield, LAW OFFICES OF MICHAEL
SCOFIELD, Charlotte, North Carolina, for Appellant. John Michael
Barton, Assistant United States Attorney, Columbia, South Carolina,
for Appellee. **ON BRIEF:** John J. Cacheris, LAW OFFICES OF
MICHAEL SCOFIELD, Charlotte, North Carolina, for Appellant.

Margaret B. Seymour, United States Attorney, Columbia, South Carolina, for Appellee.

_____

## OPINION

RUSSELL, Circuit Judge:

James McQueen appeals his two concurrently-running sentences from his convictions for conspiracy to distribute heroin, cocaine, and crack cocaine, marijuana, and various prescription pills, and for making a material false declaration before a grand jury. McQueen asserts that the Government's breach of its plea agreement warrants remanding his case for resentencing. Because the Government violated the terms of the plea agreement, we vacate McQueen's sentence and remand the case for specific performance of that agreement.

I.

In the mid-1980s, James McQueen began delivering heroin for Frank and Leroy Jones, Jr., kingpins of a drug distribution organization in South Carolina. By the early 1990s, McQueen's responsibilities included purchasing and delivering marijuana, and assisting Frank Jones in distributing prescription pills. McQueen's drug activities finally led to his arrest in March 1994.

One month after McQueen's arrest, a federal grand jury issued a superseding indictment charging him with conspiracy to distribute heroin, cocaine, crack cocaine, marijuana, and various prescription pills in violation of 21 U.S.C. § 846 and with making a material false declaration before a grand jury in violation of 18 U.S.C. § 1623. McQueen's perjury charge stemmed from his appearance before an earlier federal grand jury. At that appearance he had denied any knowledge of the Jones' illegal organization and any personal involvement therein.

At McQueen's trial, the jury found him guilty of the perjury count. While the jury continued deliberating on the conspiracy count, the Government and McQueen entered into an oral plea agreement, which

2

was never reduced to writing. Pursuant to the plea agreement, Mc-Queen pled guilty to the conspiracy charge. As gleaned from the transcript of the guilty plea hearing, the Government promised to (1) recommend that McQueen receive a sentence of no more than 63 months; and (2) recommend that McQueen receive a two-level adjustment for acceptance of responsibility.

At McQueen's sentencing hearing, the Government failed to honor both of its promises under the plea agreement. In fact, when the district court determined McQueen had not accepted responsibility and his sentence fell within the applicable guideline range of 78-90 months, the Government said it could not ask the court to give McQueen 63 months because it believed there was no factual or legal basis for a downward departure. Furthermore, the Government stated that when it had agreed to recommend a sentence of 63 months, it had assumed "that [McQueen] would get acceptance of responsibility." In other words, the Government had pre-calculated the acceptance of responsibility departure into the 63 month agreement. Consequently, McQueen received 78 months imprisonment on the drug conspiracy charge and 60 months imprisonment on the perjury count, the sentences to run concurrently.

II.

McQueen asserts that the Government's failure to argue the plea agreement terms to the sentencing court amounted to a breach of the plea agreement. The Government concedes (and the record of evidence supports) that it breached the plea agreement by not keeping either promise. Because McQueen raises this issue for the first time on appeal, however, we must affirm the sentence imposed by the district court unless we find plain error.[1]

The interpretation of plea agreements is guided by contract law, and parties to the agreement should receive the benefit of their bargain.[2] Because a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea

_____

[1] **United States v. Fant**, 974 F.2d 559, 565 (4th Cir. 1992).

[2] **United States v. Ringling**, 988 F.2d 504, 506 (4th Cir. 1993).

3

agreement, our analysis of the plea agreement or a breach thereof is conducted with greater scrutiny than in a commercial contract.**3** When reviewing a breached plea agreement for plain error, therefore, we must establish whether the breach was "so obvious and substantial that failure to notice and correct it affect[ed] the fairness, integrity or public reputation of the judicial proceedings." **4**

McQueen entered into an oral plea agreement with the Government that induced him to plead guilty to the conspiracy charge against him. At the sentencing hearing, however, the Government eschewed its obligations under the plea agreement. The Government now claims it "unintentionally" failed to abide by its promises because the Assistant United States Attorney ("AUSA") was unable to recall the exact terms of the plea agreement for two reasons. First, the plea was never reduced to writing. Second, he did not have a copy of the transcript from the guilty plea hearing. This court will not tolerate such excuses, particularly when the record of evidence reveals that the same AUSA who bargained for the plea agreement was present at both the guilty plea hearing and the sentencing hearing. The Government's failure to argue the terms of the oral plea agreement to the district court at the sentencing hearing constituted a breach of the plea agreement. And because violations of plea agreements on the part of the government serve not only to violate the constitutional rights of the defendant, but directly involve "the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government,"**5** we hold that the Government's breach constituted plain error.

Equally as troubling as the breach itself is the cursory manner in which the Government recited the oral plea into the record at the guilty plea hearing. The incompleteness of its recitation prompts us to question why the Government failed to reduce the plea agreement to writing upon its making. When a defendant's fundamental and con-

_____

**3** <u>Id</u>.
**4** **<u>Fant</u>**, 974 F.2d at 565 (quoting <u>United States v. Navejar</u>, 963 F.2d 732, 734 (5th Cir. 1992)).
**5** **<u>United States v. Harvey</u>**, 791 F.2d 294, 300 (4th Cir. 1986) (quoting <u>United States v. Carter</u>, 454 F.2d 426, 428 (4th Cir. 1992)).

stitutional rights hang in the balance, we hold that justice requires and common sense dictates memorializing the terms of the plea agreement. Because the government bears a greater responsibility than the defendant for inaccuracies and ambiguities in a plea agreement, we believe it behooves the government to reduce all oral pleas to writing.[6] Accordingly we suggest that lower courts require all future plea agreements be reduced to writing. At the beginning of the sentencing hearing, it would be incumbent upon the prosecutor and the defendant to apprise the court of the existence of the plea agreement and to submit each document to the court as a part of the official record. The time involved in memorializing the plea agreement is minimal as compared to the time wasted on appeal. The effort involved promotes not only the efficient administration of justice, but serves to safeguard the integrity and fairness of the plea process.

III.

Because the Government committed plain error in breaching the plea agreement, we grant McQueen the requested specific performance and remand his case to a different district judge for resentencing.[7] At the new sentencing, the district judge is to ensure the parties accurately and completely reduce the earlier oral plea agreement to writing. The Government will then be required to satisfy its obligations under the written agreement.

<u>VACATED AND REMANDED</u>

_____

[6] **<u>Id</u>**.
[7] **<u>United States v. Peglera</u>**, 33 F.3d 412, 415 (4th Cir. 1994).

5