**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 98-4592

ANDREW MCKINLEY BROWN, SR.,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CR-98-53)

Submitted: March 9, 1999

Decided: June 3, 1999

Before NIEMEYER and HAMILTON, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

William Arthur Webb, Federal Public Defender, G. Alan DuBois,
Assistant Federal Public Defender, Raleigh, North Carolina, for
Appellant. Janice McKenzie Cole, United States Attorney, Anne M.
Hayes, Assistant United States Attorney, Raleigh, North Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Andrew M. Brown, Sr., appeals his sentence imposed upon his guilty plea to one count of larceny of government property, see 18 U.S.C.A. § 641 (West Supp. 1998), one count of conspiracy to commit larceny of government funds, see 18 U.S.C. § 371 (1994), one count of false statements, see 18 U.S.C.A.§ 1001 (West Supp. 1998), and one count of wire fraud, see 18 U.S.C.§ 1343 (1994). Brown contends that the Government breached the plea agreement because it failed to disclose to the court the full extent of his cooperation and whether it deemed Brown's assistance as substantial. Brown also contends that the court erred by concluding that it had no authority to grant Brown's motion for substantial assistance made pursuant to U.S. Sentencing Guidelines Manual § 5K1.1 (1997). Because we find that the Government breached the plea agreement, we vacate the sentence and remand for resentencing.

Brown, a retired United States Army chief warrant officer, owned and operated Chief's Military Surplus and Repair in Fayetteville, North Carolina, near Fort Bragg. Brown's store sold military surplus items and procured parts for the military. Certain authorized personnel at Fort Bragg were permitted to make small military purchases at Brown's store using an International Merchant Purchase Authorization Card ("IMPAC"). Several IMPAC-authorized personnel allowed Brown to use their IMPAC card to make fraudulent purchases. In addition, the personnel gave Brown stolen military goods, which he later sold at his store. Brown used an IMPAC card to charge the United States Army for non-existent goods and services. Brown received funds on the basis of the charges, but the Government did not receive the goods or services. Brown split the funds with the personnel involved in the scheme. Subsequently, Brown used this scheme to secure funds to invest in a supper club he owned.

2

An indictment was issued charging Brown with four separate counts as a result of this scheme. Brown entered into a plea agreement with the Government in which he agreed to:

> waive knowingly and expressly the right to appeal whatever sentence is imposed on any ground, including an appeal pursuant to 18 U.S.C. § 3742, and further to waive any right to contest the conviction or the sentence in any post-conviction proceeding, including any proceeding under 28 U.S.C. § 2255, excepting the Defendant's right to appeal based upon grounds of ineffective assistance of counsel and prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea.

(J.A. at 14-15). For its part, the Government agreed to:

> make known to the Court at sentencing the full extent of the Defendant's cooperation, including whether the Government deems the Defendant to have substantially assisted authorities, but the Government is not promising to move for departure pursuant to 18 U.S.C. § 3553(e) or U.S.S.G. § 5K1.1.

(J.A. at 21). At the plea hearing, the court reviewed the plea agreement, including Brown's waiver of his right to contest the conviction and sentence in a post-conviction proceeding. Brown was informed that if he gave false or misleading testimony, it would be a breach of the agreement. Brown informed the court that he read and understood the plea agreement and that he voluntarily agreed to the terms of the agreement.

The presentence investigation report found that the total value of stolen goods and cash received from fraudulent IMPAC-card use was over $85,000. Thus, the report recommended a base offense level of four, see USSG § 2B1.1(a), an eight-level increase in the offense level due to the amount of loss, see § 2B1.1(b)(1)(I), a four-level increase due to Brown's role in the offense, see USSG§ 3B1.1(a), another four-level increase for receipt of stolen property, see USSG § 2B1.1(b)(4)(B), and a three-level reduction due to Brown's acceptance of responsibility, see USSG § 3E1.1(b).

3

Brown objected to the amount of loss attributed to his conduct. He also objected to the four-level increase for his role in the offense. The Government also objected, contending that the amount of loss exceeded $200,000. At the sentencing hearing, Brown told the court that there were only approximately thirteen fraudulent transactions using the IMPAC card. The Government, on the other hand, claimed that there were hundreds of fraudulent transactions. The court heard testimony from several persons, including a criminal investigator with military police, Special Agent Michael Blewett, a former employee of Brown's, and a co-conspirator.

Brown's counsel questioned Blewett on cross-examination regarding the extent of assistance provided by Brown.

> Counsel: Are you aware that Mr. Brown was debriefed by several officers in April of '98 at Wilson County Jail?
>
> Blewett: Yes, sir, I was present.
>
> Counsel: Are you aware that Mr. Brown testified at an Article 32 Hearing against Mr. Freeman at Wilson County Jail?
>
> Blewett: Yes, sir, I am.
>
> Counsel: Are you aware that Mr. Brown was prepared by Captain Greg Illikainen to testify against I believe it was Mr. Widow and Mr. Williams?
>
> Blewett: Yes, sir, I am.
>
> Counsel: Are you aware that Captain Michele Jackson prepped Mr. Brown to testify against Mr. Conway Swinton and Mr. Hayes, prepared to testify against them for their Article 32 Hearing; are you aware of that?
>
> Blewett: I am aware that he was prepared for Conway.

4

Counsel: Are you aware that there was supposed to be two 32 hearings going on this week? Mr. Freeman, he was supposed to plea as a result of Mr. Brown being prepped?

Blewett: No, I am not aware of that.

Counsel: Are you aware that Mr. Widow's case was continued for a couple of weeks and they wish for Mr. Brown to testify there?

Blewett: Yes, I am aware of that.

Counsel: Are you aware that Mr. Edwards who is part of the high-ranking officer of all these men here, that Mr. Brown was prepped to testify against him?

Blewett: I am aware of that.

Counsel: And are you aware of them prepping Mr. Brown a [sic] equivalent of an indictment was held against Mr. Edwards? A complaint was sworn out?

Blewett: Yes, I am aware of that.

Counsel: Are you aware that they wish for Mr. Brown to testify against Mr. Edwards?

Blewett: Yes, I am aware of that.

Counsel: And the rest of the men who have yet to go through the Article 32 Hearing?

Blewett: Yes, that is a part of this plea agreement, sir.

(J.A. at 89-91). After this testimony, the court asked the prosecutor if he was going to file a motion under USSG § 5K1.1, to which the

5

prosecutor responded in the negative.**1**  (J.A. at 91). The prosecutor did not comment on Blewett's cross-examination testimony one way or the other. In addition, there was no affirmative testimony or a statement from the prosecutor regarding the extent of Brown's assistance, nor did the prosecutor state whether Brown's assistance was deemed substantial.

Based on the evidence, the court found that the total loss exceeded $200,000, resulting in a ten-level increase above the base offense level of four. The court also imposed a four-level increase due to Brown's role in the offense, a four-level increase for receipt of stolen property, and a three-level reduction for acceptance of responsibility. Brown's total offense level was nineteen and he was placed in criminal history category II.

Brown moved for a downward departure under USSG§ 5K1.1. The court denied the motion on the ground that only the Government had the authority to make a motion pursuant to USSG§ 5K1.1. The court sentenced Brown to 41 months' imprisonment, at the top end of the applicable sentencing guidelines range.

Before addressing Brown's claims, we must determine the effect of his waiver of his right to appeal contained in the plea agreement. A waiver-of-appeal-rights provision in a valid plea agreement is enforceable so long as it is the result of a knowing and intelligent decision to forego the right to appeal. See United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994). Brown does not argue that his waiver was not knowingly and intelligently made. In addition, we find, after considering Brown's college background, age, business experience, and plea colloquy, that there was no evidence that Brown's acceptance of the waiver provision was anything other than knowing and intelligent. See United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992) (finding waiver of appeal rights contained in plea agreement to be knowing and intelligent, even though trial judge did not explicitly question defendant about his understanding of the waiver provision,

_____

**1** Section 5K1.1 of the sentencing guidelines states: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

where the record established that the defendant was a college graduate, that he had no difficulty with the English language, and that he had discussed the plea agreement extensively with his counsel). On the other hand, we agree with both parties that the waiver provision does not bar consideration of Brown's claim that the Government breached the plea agreement. See United States v. Rosa, 123 F.3d 94, 98 (2d Cir. 1997) (defendant may appeal, despite waiver of such right, if government breaches the plea agreement).

Brown bears the burden of demonstrating that the agreement was breached. See United States v. Conner, 930 F.2d 1073, 1076 (4th Cir. 1991). He contends that the Government's failure to make any affirmative representations regarding his assistance or to announce to the court whether it deemed Brown's assistance substantial breached the plea agreement. The interpretation of the plea agreement is guided by contract law. "Because a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea agreement, our analysis of the plea agreement or a breach thereof is conducted with greater scrutiny than in a commercial contract." United States v. McQueen, 108 F.3d 64, 66 (4th Cir. 1997) (holding that government's breach of the plea agreement was plain error).

Because Brown failed to assert in the district court that the Government breached the plea agreement, our review is limited to plain error. See United States v. Fant, 974 F.2d 559, 564-65 (4th Cir. 1992). Under this analysis, it must be shown that there was an error, the error was plain, and the plain error affected substantial rights, which Brown bears the burden of demonstrating. See United States v. Hastings, 134 F.3d 235, 239-40 (4th Cir. 1998), cert. denied , ___ U.S. ___, 66 U.S.L.W. 3758 (U.S. May 26, 1998) (No. 97-8732). Specifically, he must show that the error prejudiced him to the extent that it affected the outcome of the proceedings. See United States v. Lewis, 10 F.3d 1086, 1092 (4th Cir. 1993). Finally, "[w]hen reviewing a breached plea agreement for plain error . . . we must establish whether the breach was so obvious and substantial that failure to notice and correct it affect[ed] the fairness, integrity or public reputation of the judicial proceedings." McQueen, 108 F.3d at 66 (internal quotation omitted).

7

The Government contends that it substantially complied with the terms of the plea agreement. It points to Blewett's testimony on cross-examination in which he acknowledged several instances in which Brown provided assistance to the Government. The Government also contends that the prosecutor's refusal to move for a § 5K1.1 downward departure was an implicit statement that the Government did not deem Brown's assistance as substantial. Substantial compliance with the terms of a contract assists the court in determining whether "conduct should, in reality, be considered the equivalent of compliance under the contract." Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d 554, 561 n.15 (4th Cir. 1994). If a party deviated from the terms of the contract to a substantial measure or frustrated the purpose of the contract, then the party cannot be said to be in substantial compliance. See Joseph A. by Wolfe v. New Mexico Dep't of Human Servs., 69 F.3d 1081, 1086 (10th Cir. 1995).

Brown argues that there is no way of knowing whether Blewett's testimony reflected the full extent of Brown's cooperation or whether it fully described to what use the Government put Brown's cooperation. Certainly, Brown is entitled to the benefit of the bargain, and the plea agreement obligated the Government to inform the court of the full extent of Brown's cooperation. See McQueen , 108 F.3d at 66. Although Blewett was aware of most of Brown's statements regarding his assistance, he admitted that he was unaware that a specific co-conspirator was planning to plead guilty as a result of Brown's assistance. He was also unaware that Brown was prepared by investigators to testify against another co-conspirator. The prosecutor did not state whether the conduct of which Blewett was unaware actually did occur. Brown contends that the court was not informed that his cooperation was instrumental in obtaining guilty pleas from other co-conspirators.

The Government asserts that its obligation was fulfilled by counsel's cross-examination. The prosecutor gave no indication whether the content of defense counsel's questions, including those questions that the witness could not answer affirmatively, reflected the full extent of Brown's assistance. We think this falls short of the performance for which Brown bargained.

Furthermore, we find that the Government's refusal to file a § 5K1.1 motion is not the same as deeming that Brown did not pro-

8

vide substantial assistance. It is well established that the Government has the power, but not the duty, to file a § 5K1.1 motion. Absent a promise, no amount of substantial assistance obligates the Government to file the motion. See United States v. Dixon, 998 F.2d 228, 230 (4th Cir. 1993). In the instant appeal, the Government specifically stated that it did not promise to move for a § 5K1.1 departure. Thus, even if the Government believed Brown's assistance to be substantial, it was not under any obligation to file the motion. It follows, then, that the prosecutor's declaration that he did not intend to make the motion does not necessarily imply that the Government deemed that Brown's assistance was not substantial. As we stated in Dixon, "[T]he government promised to `deem,' one way or the other. It must keep this promise." Dixon, 998 F.2d at 231. Accordingly, we find plain error.

We must decide whether the breach affected the outcome of the proceedings. See Lewis, 10 F.3d at 1092. Brown contends that due to his assistance, the Government should have filed a§ 5K1.1 motion. He further contends that the Government did not deem his assistance substantial or file a § 5K1.1 motion merely on the basis of his challenge to the amount of loss attributed to him. He also contends that had the Government informed the court of the extent of his assistance, he might not have been sentenced at the top end of the sentencing guidelines range.

According to the Government, Brown's unwillingness to admit the true magnitude of his scheme in court decreased the value of his prior assistance.[2] Furthermore, the Government contends that Brown was not entitled to a § 5K1.1 motion because prior to the Government's investigation into his activities, he threatened a store employee because the employee was angry with him and threatened to report him to the authorities.[3] These arguments were not made in the district

---

[2] The Government claims that Brown made statements under oath that contradicted his prior statements made during the debriefings with government investigators. We note that the record does not reflect whether Brown was under oath when he engaged in a colloquy with the court describing the mechanics and magnitude of the scheme. Furthermore, the Government cites no specific examples of how Brown's statement in court contradicted prior statements.

[3] We note that the PSI did not recommend an enhancement for obstruction of justice.

9

court, of course, because there was no discussion about Brown's assistance.

We find Brown's argument that the breach may have had an effect on his sentence within the guideline's range persuasive. Because Brown was sentenced at the top end of the sentencing guidelines range, the Government's breach may have affected the outcome of the proceedings. Despite the lack of a § 5K1.1 motion, the court has the authority to consider a defendant's assistance when determining a sentence within a range. See USSG § 1B1.4 (in determining sentence within range, "court may consider, without limitation, any information concerning the background, character and conduct of the defendant"); United States v. Doe, 934 F.2d 353, 357 (D.C. Cir. 1991) ("holding that a court may always consider a defendant's assistance in selecting a sentence from within the guideline range") (emphasis in original).**4** Thus, we conclude that Brown was substantially prejudiced by the Government's breach.

Since it appears that Brown provided some assistance, including testifying against his co-conspirators and possibly influencing a co-conspirator to plead guilty, we find the prosecutor's failure to unambiguously inform the court as to the full extent of Brown's assistance violated the plea agreement. Equally violative of the plea agreement is the prosecutor's failure to deem whether Brown's assistance was substantial. "[B]ecause violations of plea agreements on the part of the government serve not only to violate the constitutional rights of the defendant, but directly involve the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government," we find that the Government's breach constituted plain error and entitles Brown to relief. McQueen, 108 F.3d at 66 (internal quotation omitted).

Insofar as Brown contends that the court erred in denying his § 5K1.1 motion, we find that the court did not have the authority to

_____

**4** On the other hand, because there was not a complete discussion regarding the extent of Brown's assistance, there is no reason to find that he was entitled to a § 5K1.1 motion or that the Government acted in bad faith when it failed to deem his assistance substantial.

10

grant the motion.**5** We note at least one circuit court has found that in light of <u>Koon v. United States</u>, 518 U.S. 81 (1996), a sentencing court may grant a defendant's motion for downward departure based on the defendant's substantial assistance. <u>See United States v. Solis</u>, 161 F.3d 281, 283-84 (5th Cir. 1998) (holding that a substantial assistance departure without a government motion is within court's discretion because it was not adequately considered by the Sentencing Commission); <u>see also In re Sealed Case (Sentencing Guidelines, Substantial Assistance)</u>, 149 F.3d 1198 (D.C. Cir.) (same), <u>reh'g granted, opinion vacated in part</u>, 159 F.3d 1362 (D.C. Cir. 1998). However, more than one year after <u>Koon</u> was decided, this Court reaffirmed the proposition that a court can impose a downward departure for substantial assistance only upon the Government's motion. <u>See United States v. Schaefer</u>, 120 F.3d 505, 508 (4th Cir. 1997).

Because the government breached the plea agreement, we vacate the sentence and remand this case for resentencing. At the new sentencing, the government is required to satisfy its obligations under the agreement. We remand the case to a different district judge for resentencing as we are required to do. <u>See United States v. Peglera</u>, 33 F.3d 412, 415 (4th Cir. 1994). We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>VACATED AND REMANDED</u>

_____

**5** The Government contends that unlike the prior claim, this claim is foreclosed from review due to Brown's waiver of his appeal rights. Because the substance of Brown's claim is without merit, we decline to reach this issue.

11