UNITED STATES of America,

v.

Agnes HOLBROOK, Defendant.

No. 2:01CR10023.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

June 25, 2002.

Eric M. Hurt, Assistant United States Attorney, Abingdon, Virginia, for the United States of America.

Anthony E. Collins, Wise, Virginia, for defendant.

## OPINION AND ORDER

JONES, District Judge.

In this criminal case, the government has filed a motion to continue the sentencing of the defendant in order to try the defendant on a charge that it had agreed to dismiss in its plea agreement. The defendant earlier unsuccessfully sought to withdraw her guilty plea, and based on that conduct, the government asserts that

it is entitled to withdraw its promise to dismiss the additional charge.

For the following reasons, the government's motion will be granted.

## I

On April 25, 2001, the defendant Agnes Holbrook was charged in a two-count indictment with possession of a firearm after conviction of a misdemeanor crime of domestic violence, in violation of 18 U.S.C.A. § 922(g)(9) (West 2000) (Count One), and with knowingly making false statements to a licensed firearm dealer in connection with the acquisition of a firearm, in violation of 18 U.S.C.A. § 922(a)(6) (West 2000) (Count Two).

Trial before a jury began in the case on August 21, 2001. The government contended that the defendant had purchased a .22 pistol from a gun dealer on February 19, 2001, and in order to buy the firearm, had falsely represented that she had not been previously convicted of a misdemeanor crime of domestic violence. The defendant also obtained through a friend a .357 magnum handgun and on March 24, 2001, used that firearm to shoot and kill her estranged husband, Larry Lee Holbrook, in the bedroom of her home.

Following the government's case-in-chief, Mrs. Holbrook elected to testify on her own behalf, conceding that she had concealed her prior conviction in order to purchase the .22 pistol and admitting that she had shot and killed her husband with the .357 magnum. She claimed that she had acted with justification, because he had threatened her on numerous occasions. She testified that on the day of his death, he had come to her home and again threatened to kill her. In support of her defense of justification, she called other witnesses, including her two young sons, who corroborated parts of her testimony.

At the conclusion of the evidence, I denied the defendant's request to instruct the jury on a justification defense.[1] Following that refusal, and on the third day of trial, the defendant entered into a written plea agreement with the government. After a Rule 11 colloquy, I accepted her guilty plea to Count One of the indictment and the jury was discharged.

Over two months later, on November 5, 2001, having fired her original attorneys and hired new counsel, the defendant filed a motion for leave to withdraw her plea. At the request of her new attorney, she was ordered to undergo a psychiatric examination to determine whether she was competent to understand the nature and consequences of the proceedings against her and assist properly in her defense. As a result of that examination, it was determined that the defendant was competent.

Evidence in regard to the defendant's motion to withdraw her plea was taken on November 8, 2001, and May 9, 2002. In essence, the defendant contended that her original attorneys should have asserted an insanity plea on her behalf. Based on oral findings of fact at the conclusion of the evidence, the defendant's motion was denied and a date for sentencing was fixed.[2]

---

1. Prior to trial, I granted the defendant's motion in limine to allow her to introduce evidence of her husband's abusive and threatening conduct in support of an affirmative defense of justification. However, I warned that depending on the actual evidence at trial, I might nevertheless refuse to instruct the jury on this issue. See *United*

*States v. Holbrook*, No. 2:01CR10023, 2001 WL 672058, at *4 (W.D.Va. June 15, 2001).

2. The defendant presented the testimony of a psychiatrist, Robert P. Granacher, Jr., M.D., in support of her motion, but Dr. Granacher finally agreed that the defendant had not met the legal definition of insanity at the time she

The government then filed the present motion which was argued on June 14, 2002. At the conclusion of the argument, I announced to the parties that the government's motion would be granted and this opinion memorializes the reasons for my decision.

## II

The plea agreement entered into by the parties provided that in exchange for the defendant's fulfillment of her obligations under the agreement, including acceptance of responsibility, the government would move to dismiss Count Two of the indictment. (Plea Agreement ¶¶ H, I.) In the agreement the defendant acknowledged that:

> I hereby agree and stipulate that if I do any of the following, I should not receive credit for acceptance of responsibility and the United States will be free to make any recommendations it wishes at sentencing or to declare a breach of this plea agreement and seek the remedies set forth in Paragraph D: (1) attempt to withdraw my guilty plea....

(*Id.* at ¶ H.) In paragraph D of the agreement the defendant stated:

> I understand that if I breach any provision of this agreement, at any time, that the United States Attorney's Office may, at its election, pursue any or all of the following remedies: ... (g) refuse to abide by any other sentencing or other stipulations contained in this plea agreement....

(*Id.* at ¶ D.)

The government asserts that the defendant's attempt to withdraw her guilty plea renders her in breach of the agreement, entitling the government to avail itself of its remedy by refusing to move to dismiss Count Two of the indictment.

While paragraph D of the agreement also provides that the government may declare the agreement null and void upon breach, the government specifically declines to seek this remedy. Instead, it requests that the plea agreement be accepted by the court, but as a remedy for the defendant's breach, it will not move to dismiss Count Two of the indictment. The government wishes to continue a sentencing hearing until a trial may be held on this count.[3]

The defendant argues that the breach of the plea agreement was not material, in that the defendant's effort to withdraw her plea of guilty was unsuccessful. In the alternative, the defendant argues that considerations of constitutional fairness should not allow the government to refuse to dismiss Count Two of the indictment while holding the defendant to her guilty plea to Count One. Accordingly, the defendant contends that if the government refuses to move to dismiss Count Two, then the defendant should be allowed to withdraw her guilty plea to Count One.

## III

Generally speaking, criminal plea agreements are analyzed with reference to contract law. *See United States v. McQueen,* 108 F.3d 64, 66 (4th Cir.1997).

---

had committed the offenses. *See* 18 U.S.C.A. § 17 (West 2000).

**3.** The defendant does not object to a continuance of the sentencing hearing and in fact has filed a motion herself to continue the hearing on the ground, among others, that it would allow her additional time to obtain evidence as to her mental condition. The defendant's principal objection is to the government's refusal to move to dismiss Count Two. Accordingly, I have considered that the defendant's position is that the court should order the government to specifically perform its promise to move to dismiss Count Two.

However, consideration of the constitutional safeguard of due process requires greater scrutiny of plea agreements than normal contracts. *See id.* Where the government asserts that a defendant has failed to perform a condition precedent in a plea agreement, it may not act unilaterally, but only after a showing to the court "on adequate evidence" that the defendant has substantially breached the agreement. *United States v. Simmons,* 537 F.2d 1260, 1261 (4th Cir.1976).

■ Contracts are construed according to the plain meanings of their terms. *See Grant v. Carotek, Inc.,* 737 F.2d 410, 412 (4th Cir.1984). "Unless a different intention is manifested, ... where language has a generally prevailing meaning, it is interpreted in accordance with that meaning...." Restatement (Second) of Contracts § 202 (1981).

■ The terms of the plea agreement here are plain that once the defendant attempted to withdraw her guilty plea, she was in breach of the agreement and the government could then seek the appropriate remedies as defined in paragraph D, including refusing to abide by its stipulation to seek dismissal of Count Two.

Moreover, I find that the defendant's attempt to withdraw her guilty plea was a material breach of the agreement.

It is an established part of contract law that where the breach of contract "was slight or minor, as opposed to material or substantial, the nonbreaching party is not relieved of his or her duty of performance." 14 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 43:5, at 573–74 (4th ed.2000). The determination of whether a contract

breach is material should include consideration of "the extent to which the injured party will be deprived of the benefit which [it] reasonably expected." Restatement (Second) of Contracts § 241 (1981).

■ Plea agreements are an essential part of the criminal justice system. *See Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).[4] These agreements benefit the public interest by limiting expenditure of scarce resources while assuring the finality of the criminal process. *See Hartman v. Blankenship,* 825 F.2d 26, 28 (4th Cir.1987).

The defendant's motion to withdraw her plea resulted in a continuation of these proceedings for over seven months, together with considerable expense and effort by the government through multiple hearings in defending against the motion to withdraw. Thus, the government's benefit from the agreement was greatly diminished by the defendant's attempt to withdraw her plea. Moreover, the defendant was warned by the government immediately after she filed her motion to withdraw her guilty plea that the government would take the position that any such attempt would relieve the government of its promise to move to dismiss Count Two.[5] For these reasons, I find that the defendant's prolonged attempt to withdraw her plea was a material breach of the plea agreement.

The defendant entered into the plea agreement after bargaining with the government while represented by counsel. She indicated her understanding of the terms of the agreement during the course of a Rule 11 colloquy after which I determined that the defendant entered into the

---

**4.** In fiscal year 2000, 95.5% of federal criminal convictions were by guilty pleas. *See* U.S. Sentencing Comm'n, *2000 Sourcebook of Fed. Sentencing Statistics* 21.

**5.** *See* Letter from Eric M. Hurt, Assistant United States Attorney, to Anthony Collins (Nov. 7, 2001) (in court file).

agreement knowingly and voluntarily. *See* Fed.R.Crim.P. 11(c). This is not a case in which the defendant "could only have reasonably understood ... the plea agreement to mean that if [s]he failed to live up to h[er] end of the bargain, the entire plea agreement would be null and void" and she could withdraw her plea. *United States v. Fernandez,* 960 F.2d 771, 773 (9th Cir. 1992).

I am not unmindful of the fact that the defendant faces a greater sentence if she is convicted of Count Two. Since death resulted from her commission of the offense charged in Count One, her sentencing guideline range may exceed the maximum imprisonment of ten years authorized by statute for Count One. *See* U.S. Sentencing Guidelines Manual § 2K2.1(c)(1)(B) (2001) (where death results from firearm offense, the applicable homicide offense level applies). With conviction of an additional count, however, the applicable guideline range may be reached by the imposition of consecutive sentences on the multiple counts of conviction. *See id* § 5G1.2(d). It is doubtless true that an important advantage to the defendant of the plea agreement was that by the dismissal of Count Two, her maximum punishment was capped at ten years imprisonment, which is the statutory maximum for Count One. If she is convicted of Count Two, she faces imprisonment greater than ten years. Nevertheless, it does no violence to due process to hold the defendant to her bargain under the circumstances of this case. *See Hentz v. Hargett,* 71 F.3d 1169, 1174–76 (5th Cir.1996) (holding that no constitutional violation occurred where state prosecutor did not allow defendant to withdraw guilty plea and reinstated additional charges after defendant violated plea agreement by failing to testify truthfully at co-defendant's trial).

IV

Therefore, for the reasons stated in this opinion, it is **ORDERED** that the government's motion to continue the sentencing of the defendant and set a trial date as to Count Two [Doc. No. 56] is granted.