**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 06-5203**

─────────────

UNITED STATES OF AMERICA,

　　　　　　　Plaintiff - Appellee,

　　　v.

CURTIS LYNN MORGAN,

　　　　　　　Defendant - Appellant.

─────────────

**No. 06-8055**

─────────────

UNITED STATES OF AMERICA,

　　　　　　　Plaintiff - Appellee,

　　　　v.

CURTIS LYNN MORGAN,

　　　　　　　Defendant - Appellant.

─────────────

Appeals from the United States District Court for the Western
District of Virginia, at Roanoke.  James C. Turk, Senior District
Judge.  (7:03-cr-00084; 7:05-cv-00636)

─────────────

Argued:  March 20, 2008　　　　　　　Decided:  July 3, 2008

─────────────

Before TRAXLER, Circuit Judge, HAMILTON, Senior Circuit Judge, and David R. HANSEN, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

---

Affirmed in part; vacated and remanded in part by unpublished per curiam opinion.

---

**ARGUED:** Paul Graham Beers, GLENN, FELDMANN, DARBY & GOODLATTE, Roanoke, Virginia, for Appellant. Jean Barrett Hudson, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee. **ON BRIEF:** John L. Brownlee, United States Attorney, Donald R. Wolthuis, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Curtis Lynn Morgan challenges his guilty plea and sentence by means of a direct appeal and an action for collateral review under § 2255, which have been consolidated before this court. For the reasons that follow, we affirm the district court's denial of Morgan's claim that the government breached the plea agreement as well as the dismissal of Morgan's ineffective assistance claim under § 2255. We remand, however, for re-sentencing under the advisory Guidelines in accordance with the remedial scheme set forth in United States v. Booker, 543 U.S. 220 (2005).

I.

Morgan was indicted on nine drug-distribution counts stemming from his involvement in a drug-trafficking conspiracy that operated in Roanoke, Virginia, and elsewhere between May 2001 and December 2002. During the ensuing plea negotiations, Assistant United States Attorney ("AUSA") Ruth Plagenhoef sent a letter to Morgan's attorney stating that various co-conspirators had decided to plead guilty and that there was strong evidence against Morgan, specifically in regard to Morgan's using or carrying firearms in connection to drug trafficking. The letter also stated: "I hope this [letter] helps Mr. Morgan understand the strength of the evidence against him and my view of his relative culpability. I think a deal in which he gets 15 years instead of 65 is pretty

3

fair.  Call me if you have more questions or if I need to get ready for trial."  J.A. 187.

On March 5, 2004, Morgan entered into a written plea agreement under which Morgan agreed to plead guilty to four counts of the indictment:  conspiracy to distribute (count one); possessing with intent to distribute (count eight); and two counts charging that Morgan used or carried a firearm in relation to a drug-trafficking offense (counts two and nine).  According to the terms of the agreement, Morgan "underst[ood] that if convicted as charged . . . [he would] be facing at least 65 years imprisonment."  J.A. 16.  Therefore, he intended "to enter into this plea agreement that provides as a practical matter that [he] receive a 40 year sentence together with an opportunity to reduce [his] sentence through cooperation with the United States."  J.A. 16.  Morgan waived his right to appeal "any sentencing guidelines factors or the Court's application of the sentencing guidelines factors to the facts of [his] case."  J.A. 21.  Morgan "further agree[d] to waive [the] right to collaterally attack, pursuant to . . . section 2255, the judgment and any part of the sentence imposed . . . by the Court."  J.A. 22.

By signing the agreement, Morgan also acknowledged that "no one has promised . . . [that] a substantial assistance motion will be made on [his] behalf" and "agree[d] that th[e] plea agreement [was] not contingent in any way on the [government] making a

4

substantial assistance motion." J.A. 23. Additionally, the agreement reflected Morgan's "understand[ing] that any motion for a departure made in this case [would] only be made to reduce [his] sentence under Count Nine" and that "the U.S. [would] not agree to a departure below the fifteen year mandatory minimum total sentences of Counts One and Two." J.A. 24.

Finally, the agreement included the following language: "This Plea Agreement supersedes all prior understandings, promises, agreements, or conditions, if any, between the United States and [Morgan]. . . . [Morgan has] consulted with [his] attorney and fully understand[s] all [his] rights with respect to the offenses charged in the pending indictment. . . . Being aware of all of the possible consequences of [his] plea, [Morgan has] independently decided to enter this plea of [his] own free will." J.A. 27.

On March 5, 2004, the district court conducted a guilty-plea hearing. After the court recounted the charges and the applicable mandatory minimums, Morgan indicated he understood that count one (conspiracy) carried a mandatory 10-year minimum sentence (and a maximum of forty years); that count two (using and carrying) carried a five- year mandatory consecutive sentence; and that count nine (using and carrying) carried a 25-year mandatory consecutive term. (Supp. J.A. 5-6). Morgan agreed that he was satisfied with his lawyer and that, having discussed his potential sentence with

counsel, he understood the potential sentence was "subject to the sentencing guidelines." Supp. J.A. 14.

Before accepting Morgan's plea, the district court noted that both the United States Attorney and the court had explained "the minimum mandatory and maximum sentences for these offenses, [and] the fact that they are subject to the sentencing guidelines." Supp. J.A. 17. The court found "as a matter of fact [that Morgan] understands these" and that he understands "the consequences of entering pleas of guilty." Supp. J.A. 17.

Finally, the court asked if Morgan had gone over the plea agreement with his attorney and whether Morgan understood what he was agreeing to; Morgan answered yes to both questions. The court then explained to Morgan that "if you are sentenced within the guideline range, you will waive and give up your right to appeal these sentences, and you are also giving up your right to collaterally attack the sentences by way of habeas corpus petition. . . . [T]he government may or may not file a substantial assistance motion in your case. If the government does file such a motion, then the court is free to depart below the guidelines in fixing your sentence." Supp. J.A. 18-19.

Prior to sentencing, the government moved for a substantial assistance departure as to count nine (using and carrying under § 924(c)), which carries a 25-year consecutive mandatory minimum sentence. The government's motion was made under 18 U.S.C.A.

6

§ 3553(e), thus providing the district court with the authority to impose a sentence below the statutory mandatory minimum.

On October 14, 2004, the district court held Morgan's sentencing hearing. The court granted the government's substantial assistance motion as to count nine. The government took the position that any sentence for count nine was required to run consecutively, but then suggested that the court simply impose a one-day sentence on count nine. The district court accepted the government's suggestion, thereby avoiding the 25-year sentence that would otherwise have been required for count nine.

Unfortunately for Morgan, he was a career offender under § 4B1.1, which resulted in a sentencing range for the drug trafficking conspiracy charge (count one) and possession charge (count eight) of 262-322 months. The district court sentenced Morgan to 262 months, the lowest sentence possible before Booker, but the court was required to add the five-year consecutive term for using and carrying a firearm under § 924(c), yielding a sentence of 322 months.

After the judge announced the sentence, Morgan expressed surprise and said he thought he was getting 15 years:

> [MORGAN]: . . . It was my understanding from my guilty plea I was to receive a 15-year sentence. That was my understanding, if I was to plead guilty to the charges, that I would receive a 15-year sentence. I just don't know what happened to the agreement.

7

THE COURT:  I don't know either.  And I don't think that would have been out of the ballpark.  I think that maybe would have been fair.

[MORGAN]:  Because I have that on paper from [AUSA] Plagenhoef, in my cell, Your Honor.  [referring to the March 1, 2004 letter].

THE COURT:  That you would get 15 years?

[MORGAN]:  15 years, yes, sir, if I was to plead guilty, and avoid a 65-year sentence.

THE COURT:  . . . I don't think that was included in the plea agreement.  Does the US Attorney know about this?

[AUSA] WOLTHUIS:  . . . [T]he plea agreement certainly reduced his exposure under the statutory minimum mandatories, from 40 to 15. . . . I don't know if that's what Morgan is referring to, but I suspect [it] was, that the <u>minimum mandatories</u> would be reduced that amount.  But I'm aware of no conversations relating to coming in with a fixed recommendation that would ignore the sentencing guidelines.

J.A. 59-60.

On October 13, 2005, Morgan filed a § 2255 petition, alleging that his attorney provided ineffective assistance of counsel by failing to file a direct appeal of the sentence after Morgan asked him to do so and by failing to explain adequately the consequences of the guilty plea such that Morgan did not enter into it knowingly and voluntarily.

The government moved to dismiss, arguing that Morgan expressly waived his right to raise a collateral challenge.  The district court agreed, concluding that the waiver provision in the plea agreement was valid and effective:  "Review of the . . .  Rule 11

8

colloquy clearly demonstrates that petitioner knowingly and voluntarily waived his right to file this § 2255 motion attacking his sentence." J.A. 131. The court found that Morgan's claim "that he was unaware of the consequences of his guilty plea, [was] inconsistent with statements he made under oath," J.A. 133-34, noting that Morgan affirmed his understanding of the "maximum penalties . . . as well as the fact that the court was free to sentence him up to the statutory maximum." J.A. 133. The district court therefore dismissed Morgan's claim that counsel's ineffective assistance resulted in a guilty plea that was not knowing and voluntary.[1]

The district court concluded, however, that the failure-to-appeal claim fell outside of the waiver provision and that an evidentiary hearing was required. Based on the evidence presented at the hearing, the district court found that "Morgan unequivocally conveyed to [his attorney] his desire to file an appeal of the sentence by asking [his lawyer], 'Can I appeal?'" J.A. 193. The court found

> credible Morgan's testimony that in reliance on the express mention of a fifteen-year sentence in [AUSA] Plagenhoef's letter and in the plea agreement, Morgan

---

[1]The court later granted a certificate of appealability on this issue, concluding that, in light of the fact that Morgan believed he would get a fifteen-year sentence, "it is at least debatable that counsel's discussions with Morgan regarding the plea agreement and its consequences fell below a reasonable professional standard" and that competent advice would have caused him to reject the plea agreement. J.A. 216.

9

> pled guilty because he believed he would receive a sentence of fifteen years. The court also finds . . . that Morgan asked [his attorney] at sentencing for a copy of the [Plagenhoef letter] in order to prove the fifteen-year sentence agreement to the court. This fact is borne out by Morgan's statements during the sentencing hearing and counsel's testimony at the evidentiary hearing that he remembered Morgan expressing disappointment that the sentence was more than fifteen years.

J.A. 193. The court therefore granted Morgan's § 2255 motion as to the failure to appeal claim to provide Morgan with a "renewed opportunity to appeal." J.A. 194. The district court directed the "clerk [to] prepare a new judgment . . . in every respect the same as the previous judgment except as to date of entry," J.A. 195, and the court on November 14, 2006, entered an amended judgment, thus resetting the appeal clock. Morgan timely appealed from the amended judgment.

## II.

### A.

In his direct appeal, Morgan contends that the government breached the plea agreement by failing to move for a downward departure to a sentence of fifteen years total, and he seeks specific performance of this purported promise.

10

Issues involving the interpretation of plea agreements are reviewed de novo. See United States v. Wood, 378 F.3d 342, 348 (4th Cir. 2004).[2] In interpreting a plea agreement, we are

> guided by contract law, and parties to the agreement should receive the benefit of their bargain. Because a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea agreement, our analysis of the plea agreement or a breach thereof is conducted with greater scrutiny than in a commercial contract.

United States v. McQueen, 108 F.3d 64, 66 (4th Cir. 1997) (internal quotation marks and footnotes omitted); see United States v. Ringling, 988 F.2d 504, 506 (4th Cir. 1993) ("Plea bargains rest on contractual principles, and each party should receive the benefit of its bargain."). The government breaches a plea agreement when it fails to fulfill a promise that "can be said to be part of the inducement or consideration" for the plea agreement. Santobello v. New York, 404 U.S. 257, 262 (1971).

Morgan contends that AUSA Plagenhoef, on behalf of the government, promised to move for a downward departure to a sentence

---

[2]We are not convinced that Morgan raised the specific performance issue before the district court. When the defendant fails to raise such an issue before the district court, he must establish that plain error occurred, meaning that "the breach was so obvious and substantial that failure to notice and correct it affected the fairness, integrity or public reputation of the judicial proceedings." United States v. McQueen, 108 F.3d 64, 66 (4th Cir. 1997) (internal quotation marks and alteration omitted). Because we conclude that the government fulfilled its obligations in connection to Morgan's guilty plea, we need not decide whether Morgan raised this issue below because he loses regardless of which standard of review is applied.

of fifteen years based on Morgan's substantial assistance.  This promise, Morgan claims, is reflected in the March 1 Plagenhoef letter commenting on the strength of the evidence against Morgan and stating that "a deal in which [Morgan] gets 15 years instead of 65 is pretty fair."  J.A. 187.  Morgan claims that the formal written plea agreement, which was executed on March 4, is not to the contrary and, in fact, confirms his understanding that he would receive a recommendation of fifteen years in exchange for his cooperation with the government.  In particular, he relies on section 15 of the plea agreement, which addresses the opportunity for Morgan to earn a more favorable sentence by providing substantial assistance to the government.  Section 15 also contains the following limitation, which was initialed by Morgan:  "I understand that any motion for a departure made in this case will only be made to reduce my sentence under Count Nine of the Indictment, that is, the United States will not agree to a departure below the fifteen year mandatory minimum total sentences of Counts One and Two."  J.A. 24.  Morgan believes that implicit in this language is the government's confirmation that it will recommend that the court depart to fifteen years but no less.

We disagree.  The plea agreement contained a merger clause that provided in relevant part as follows:

> This writing sets forth the entire understanding between the parties and constitutes the complete Plea Agreement between the United States Attorney . . . and me, and no other additional terms or agreements shall be entered

12

> except and unless those other terms or agreements are in writing and signed by the parties.  This Plea Agreement <u>supercedes all prior understandings, promises, agreements, or conditions, if any, between the United States and me</u>.

J.A. 27 (emphasis added).  Therefore, to the extent the Plagenhoef letter reflects any promise made by the government, the subsequent plea agreement supercedes it.  See <u>United States v. Davis</u>, 393 F.3d 540, 546 (5th Cir. 2004); <u>United States v. Fagge</u>, 101 F.3d 232, 234 (2nd Cir. 1996); <u>see also</u> <u>United States v. Hunt</u>, 205 F.3d 931, 935 (6th Cir. 2000) ("An integration clause normally prevents a criminal defendant, who has entered into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself.").

Looking to the four corners of the written plea agreement, we find no language promising that in exchange for Morgan's substantial assistance, the government would move for a downward departure that yields a sentence of 15 years.  Instead, the plea agreement required Morgan to acknowledge that "no one has promised me that such a 'substantial assistance' motion will be made on my behalf" and that the "plea agreement is not contingent in any way on the United States making a substantial assistance motion."  J.A. 23.  The plea agreement does provide that if, in the opinion of the United States Attorney's office, Morgan successfully offers substantial assistance to the government, "then a motion will be made at my sentencing . . . requesting that the Court depart from

13

the Sentencing Guidelines, and sentence at a lesser level than would otherwise be found to be the applicable guidelines sentence." J.A. 24. And, in fact, the government did seek a departure on count nine, and Morgan received a one-day sentence on that count. The government therefore fulfilled its obligations under the plea agreement.

However, the plea agreement expressly states that the government would move for a downward departure, if at all, on count nine only, and that it would not seek a departure for counts one and two. The sentence Morgan received was a function of his designation as a career offender with regard to count one, a charge for which the government had not agreed to even consider seeking a downward departure. Thus, there is no language in the plea agreement that can be interpreted as requiring the government to seek a total sentence of fifteen years.

For the foregoing reasons, we conclude that Morgan has failed to establish that the government breached the plea agreement, much less that any "breach was so obvious and substantial that failure to notice and correct it [would] affect[] the fairness, integrity or public reputation of the judicial system." McQueen, 108 F.3d at 66 (internal quotation marks omitted).

B.

Alternatively, Morgan asserts that re-sentencing is required under Booker, reasoning that the district court, in resetting the

14

time for Morgan to file a direct appeal, ran afoul of <u>Booker</u> by simply re-imposing the original sentence that the court imposed in 2004 under what was then a mandatory sentencing regime under the Guidelines. <u>See</u> <u>United States v. White</u>, 406 F.3d 827, 835 (7th Cir. 2005) (explaining that because <u>Booker</u> rendered the Sentencing Guidelines advisory, "the mere mandatory application of the Guidelines--the district court's belief that it was required to impose a Guidelines sentence--constitutes error"). Morgan argues that because the district court indicated that it would have imposed a lower sentence if not for the Guidelines, his substantial rights were affected by the <u>Booker</u> error. <u>See</u> <u>United States v. White</u>, 405 F.3d 208, 223-24 (4th Cir. 2005). The government agrees that the matter should be remanded for re-sentencing under the advisory Guidelines scheme in accordance with <u>Booker</u>.

For the reasons suggested by the parties, we agree that Morgan should by re-sentenced in accordance with <u>Booker</u>. Therefore, we vacate Morgan's sentence and remand for the limited purpose of re-sentencing under the advisory Guidelines in accordance with the remedial scheme set forth in <u>Booker</u>.

III.

Having been issued a certificate of appealability by the district court, Morgan also challenges the district court's denial of his § 2255 claim that his guilty plea was invalid because

15

counsel provided ineffective assistance in failing to advise Morgan adequately regarding the consequences and potential prison time resulting from his guilty plea.  See Strickland v. Washington, 466 U.S. 668, 687 (1984) (ineffective assistance claim requires showing that "counsel's performance was deficient" and "the deficient performance prejudiced the defense").  The district court did not reach the merits, however, dismissing the claim based on the court's conclusion that the plea agreement contained a valid waiver of collateral-attack rights which barred Morgan from bringing his § 2255 action.  We review a district court's denial of relief under § 2255 de novo.  See United States v. Nicholson, 475 F.3d 241, 248 (4th Cir. 2007).

As part of a plea agreement, "a criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary."  United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).  Morgan's plea agreement contained a broad and express waiver of the right to collaterally attack the judgment or sentence imposed by the court.  During the Rule 11 colloquy, Morgan affirmed under oath his understanding of both the potential consequences of his pleading guilty and his agreement not to raise a collateral challenge to his convictions or sentences.  Morgan testified that he had reviewed the plea agreement with his lawyer and understood its provisions.  He was presented with the potential penalties associated with the

16

various charges and affirmed that he understood these penalties. Additionally, Morgan affirmed his understanding that, in pleading guilty according to the terms of the plea agreement, he was "waiv[ing] and giv[ing] up [his] right to appeal these sentences," and that he was "also giving [his] right to collaterally attack the sentences by way of habeas corpus petition." Supp. J.A. 18-19.

As the district court pointed out, Morgan's assertions on appeal contradict his testimony at the Rule 11 colloquy: Morgan's "current claim that he was unaware of the consequences of his guilty plea, is inconsistent with statements he made under oath." J.A. 134. "A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." Lemaster, 403 F.3d at 221 (citation, internal quotation marks, and alterations omitted). In fact, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioners sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible,' and 'patently frivolous or false." Id. (citations omitted).

We agree, therefore, that Morgan knowingly and voluntarily waived his right to raise a collateral attack and we affirm the district court's dismissal of Morgan's § 2255 claim.

17

IV.

As set forth above, we affirm the district court's denial of Morgan's claim that the government breached the plea agreement as well as the dismissal of Morgan's claim for relief under § 2255. We remand, however, for re-sentencing under the advisory Guidelines in accordance with the remedial scheme set forth in <u>Booker</u>.

<u>AFFIRMED IN PART;</u>
<u>VACATED AND REMANDED IN PART</u>