**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MALCOLM DAWSON, a/k/a Jun, a/k/a Mac,

*Defendant-Appellant.*

No. 08-4000

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Frank D. Whitney, District Judge.
(3:05-cr-00104-FDW-CH-11)

Argued: October 27, 2009

Decided: December 3, 2009

Before KING, Circuit Judge, HAMILTON, Senior Circuit
Judge, and Anthony J. TRENGA, United States District
Judge for the Eastern District of Virginia, sitting by
designation.

Vacated and remanded for resentencing by published opinion.
Senior Judge Hamilton wrote the opinion, in which Judge
King and Judge Trenga joined.

## COUNSEL

**ARGUED**: Sandra Barrett, Asheville, North Carolina, for
Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED

STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

---

**OPINION**

HAMILTON, Senior Circuit Judge:

The issue presented in this appeal is whether the defendant, Malcolm Dawson, is entitled to be resentenced based on his claim that the government breached the terms of his plea agreement by failing to recommend at sentencing a two-level minor participant reduction in his offense level. For the reasons stated below, we conclude that Dawson has met his burden of establishing plain error. Accordingly, we vacate his sentence and remand for resentencing.

I

On April 25, 2005, Dawson was charged in one count of a six-count indictment returned by a federal grand jury in the Western District of North Carolina. Count One of the indictment alleged that twenty-five individuals, including Dawson, engaged in a conspiracy to distribute fifty grams or more of crack cocaine and five kilograms or more of powder cocaine, 21 U.S.C. §§ 841(a)(1) and 846.

On October 18, 2006, Dawson and the government entered into a written plea agreement. Several terms of the plea agreement are relevant to this appeal. First, the parties executed the plea agreement pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, which provides in relevant part that a sentencing "recommendation or request does not bind the court." Fed. R. Crim. P. 11(c)(1)(B). Second, the parties stipulated that the amount of cocaine that was known to or reasonably foreseeable by Dawson was at least two kilograms

but less than 3.5 kilograms. Third, the government agreed to recommend at sentencing a two-level minor participant reduction in Dawson's offense level pursuant to *U.S. Sentencing Guidelines Manual* (USSG) § 3B1.2(b).[1] Fourth, the parties agreed that "any reduction in offense level" ultimately was "for the Court's determination." (J.A. 39). Fifth, Dawson waived the right "to contest the . . . sentence" except for claims of "ineffective assistance of counsel," or "prosecutorial misconduct," or on the ground that

> one or more findings on guideline issues were inconsistent with the explicit stipulations contained in any paragraph in the plea agreement . . . , or on the basis of an unanticipated issue that arises during the sentencing hearing and which the District Judge finds and certifies to be of such an unusual nature as to require review by the Fourth Circuit Court of Appeals.

(J.A. 42). Finally, the plea agreement required that all modifications be in writing.

---

[1]Section 3B1.2 of the Guidelines provides for a four-level reduction in a defendant's offense level where the district court finds that the defendant was a "minimal participant" in the criminal activity, and a two-level reduction where the district court finds that the defendant was a "minor participant" in the criminal activity. USSG § 3B1.2. The commentary makes clear that § 3B1.2 is intended to cover only "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." *Id.* § 3B1.2 cmt. n.3(A). In defining "minimal participant," the commentary provides that the four-level reduction applies to a defendant who is "plainly among the least culpable of those involved in the conduct of a group" and that relevant to this determination is a defendant's "lack of knowledge or understanding of the scope and structure of the enterprise and the activities of others." *Id.* § 3B1.2 cmt. n.4. The commentary also provides that a "minor participant" warranting a two-level reduction in the offense level is a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* § 3B1.2 cmt. n.5.

On November 1, 2006, a Rule 11 hearing was conducted by a United States Magistrate Judge. At the hearing, the magistrate judge summarized the elements of the offense to which Dawson was pleading guilty and Dawson affirmed that he was, in fact, guilty of the conspiracy offense charged in the indictment. The magistrate judge explained the appeal waiver and Dawson affirmed that he understood that, as part of his plea agreement, he "waived [his] right to appeal [his] conviction or sentence with some very narrow exceptions." (J.A. 56). At the conclusion of the hearing, the magistrate judge found that Dawson's guilty plea was "knowingly and voluntarily made" with an understanding of "the charges, potential penalties and the consequences" of his plea. (J.A. 59).

On May 17, 2007, the Probation Officer submitted a Presentence Report (PSR) in preparation for Dawson's sentencing hearing. In the Offense Conduct section of the PSR, the Probation Officer summarized the activities of the conspiracy to which Dawson had pled guilty, including the extent of his participation in the conspiracy. According to the Probation Officer, the drug conspiracy centered around Michael Brian McCall, Amos Calvin Hall, Gabriel Romero, and Kelvin Beaufort. McCall and Hall primarily were distributors to "runners and/or customers" or other "major distributors and/or suppliers" in the Charlotte, North Carolina area. (J.A. 98). Romero and Beaufort were McCall and Hall's main sources for cocaine. From time-to-time, Dawson assisted Beaufort who was disabled by driving him to transactions or delivering cocaine for him, and the parties agree that Dawson was unreliable in providing these services. The Offense Conduct section of the PSR concluded by indicating that the drug quantity to which the parties stipulated, between two and 3.5 kilograms of cocaine, was an accurate estimate of what was known to or reasonably foreseeable by Dawson.

Based on the stipulated drug quantity, the Probation Officer set Dawson's base offense at 28. USSG § 2D1.1(c)(6). A three-level reduction for acceptance of responsibility, *id.*

§ 3E1.1, resulted in a total offense level of 25. The Probation Officer surprisingly did not address the stipulation in the plea agreement that required the government to recommend a two-level minor participant reduction pursuant to USSG § 3B1.2(b), thus the Probation Officer expressed no opinion on whether Dawson was entitled to such a reduction.[2] Combined with a criminal history category of III, Dawson's offense level of 25 resulted in a sentencing range of 70 to 87 months' imprisonment.[3] Neither the government nor Dawson objected to the facts found in the PSR or the legal conclusions drawn from those facts.

The district court conducted Dawson's sentencing hearing on December 11, 2007. During the hearing, Dawson affirmed that he was, in fact, guilty of the offense to which he had pled guilty and stipulated to the factual basis as set forth in the PSR. Counsel for Dawson agreed that the advisory calculations set forth in the PSR were "appropriate." (J.A. 71). In arguing for a lenient sentence, Dawson's counsel stressed that Dawson was not a "leader or organizer or a critical component" of the conspiracy, Dawson's marijuana use during the conspiracy affected his judgment, no weapons were involved in his offense, and that he was unreliable as a delivery person for Beaufort. (J.A. 72). In response, rather than arguing that Dawson should receive a minor participant reduction in his offense level, the Assistant United States Attorney (AUSA) for the government argued in direct contradiction to the stipulation in the plea agreement. The AUSA argued that Dawson was an "important," "critical" component of the conspiracy, as

---

[2]The Probation Officer did note that the plea agreement required the government to recommend a downward adjustment for acceptance of responsibility and, as noted, the Probation Officer applied such an adjustment.

[3]Of note, the statutory minimum for Dawson's offense is sixty months' imprisonment under 21 U.S.C. § 841(b)(1)(B). Thus, with the minor participant reduction, a total offense level of 23 would have yielded a sentencing range of 60 to 71 months' imprisonment.

Beaufort needed Dawson to perform his cocaine distribution activities. (J.A. 75, 76).

In sentencing Dawson to 70 months' imprisonment (the bottom of the sentencing range), the district court understandably did not address the stipulation in the plea agreement requiring the government to recommend the minor participant reduction, as the issue was never raised by the parties or in any way brought to the attention of the district court. The district court noted that while Dawson had potential for rehabilitation, he was, as the government had "pointed out," a "key player" in the conspiracy, "making it possible for Kelvin Beaufort, a paraplegic, to be involved in cocaine and crack trafficking." (J.A. 78). In imposing the sentence, the district court considered both the advisory sentencing range and the factors set forth in 18 U.S.C. § 3553(a). The district court also stated that it was imposing a twelve-year term of supervised release, to be served following Dawson's release from prison, because Dawson had "been involved in a serious offense" evidencing a lack of respect for the law, and the district court had the duty to deter Dawson from "going into drug trafficking again." (J.A. 79).

Dawson noted a timely appeal.

## II

Dawson seeks to be resentenced based on the government's failure to recommend the minor participant reduction at sentencing as the government had contractually agreed to do in the plea agreement.[4] According to Dawson, he would not have pled guilty without this inducement, and the breach caused

---

[4]A defendant's waiver of appellate rights cannot foreclose an argument that the government breached its obligations under the plea agreement. *United States v. Cohen*, 459 F.3d 490, 495 (4th Cir. 2006). Accordingly, the government properly does not seek to enforce Dawson's appeal waiver as to this claim.

him prejudice because his sentencing range would have been 60 to 71 months' imprisonment instead of 70 to 87 months' imprisonment.

When a claim of breach of a plea agreement has been preserved, we review the district court's factual findings for **clear error** and its "application of principles of contract interpretation *de novo*." *United States v. Bowe*, 257 F.3d 336, 342 (4th Cir. 2001). However, because Dawson did not claim in the district court that the government had breached the plea agreement, our review is for **plain error**. *Puckett v. United States*, 129 S. Ct. 1423, 1428 (2009).

Plain error requires the existence of (1) an error, (2) that is plain, (3) that affects the defendant's substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* The defendant bears the burden of satisfying each of the elements of the plain error standard. *United States v. Vonn*, 535 U.S. 55, 59 (2002).

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). "It is well-established that the interpretation of plea agreements is rooted in contract law, and that each party should receive the benefit of its bargain." *United States v. Peglera*, 33 F.3d 412, 413 (4th Cir. 1994) (citation and internal quotation marks omitted). "A central tenet of contract law is that no party is obligated to provide more than is specified in the agreement itself." *Id.* "Accordingly, in enforcing plea agreements, the government is held only to those promises that it actually made," and "the government's duty in carrying out its obligations under a plea agreement is no greater than that of fidelity to the agreement." *Id.* (citation and internal quotation marks omitted).

Here, the government concedes that it breached the plea agreement when the AUSA failed to recommend to the dis-

trict court at sentencing that Dawson receive a two-level minor participant reduction. Accordingly, Dawson has established the first two prongs of the plain error standard. *See Santobello*, 404 U.S. at 262 (noting that the government breaches the plea agreement when a promise it made to induce the plea goes unfulfilled).

A defendant's substantial rights are affected if the error "affected the outcome of the district court proceedings." *Puckett*, 129 S. Ct. at 1429 (citation and internal quotation marks omitted). Where the affected rights relate to sentencing, the outcome the defendant must show to have been affected is his sentence. *Id.* at 1433 n.4. "The defendant whose plea agreement has been broken by the Government will not always be able to show prejudice, either because he obtained the benefits contemplated by the deal anyway . . . or because he likely would not have obtained those benefits in any event." *Id.* at 1432-33 (footnote omitted). When the record does not so reflect, we are free to conclude that the defendant has shown a "reasonable probability, based on the appellate record as a whole, that but for the error he would have received a more favorable sentence." *United States v. Lovelace*, 565 F.3d 1080, 1088 (8th Cir. 2009) (citation and internal quotation marks omitted).

Obviously, Dawson did not obtain one of the benefits contemplated by the plea agreement, as the AUSA did not recommend to the district court that he receive the minor participant reduction. Moreover, the record does not reflect that Dawson "likely would not have obtained [the minor participant reduction] in any event." *Puckett*, 129 S. Ct. at 1433. Several reasons lead us to this conclusion. First, it was at the government's strenuous urging that the district court found that Dawson was a "key player" in the conspiracy. (J.A. 78). Thus, it stands to reason that a contrary argument (setting forth in detail the government's reasons for supporting the minor participant reduction) may have been able to influence the district court's decision.

Second, unlike *Puckett*, nothing occurred after the plea agreement was signed that undermined the government's firm and unequivocal belief that Dawson was entitled to the minor participant reduction. Rather, after its extensive and thorough pre-plea agreement investigation, the government determined that Dawson was a minor participant, and the parties entered into the plea agreement with the understanding that the minor participant reduction was warranted, subject of course to the district court's discretion. Nothing occurred after the plea agreement was signed that altered the government's view of Dawson's role in the offense. Given these facts, we are troubled that the government argued on appeal to this court that Dawson was not entitled to the reduction (perhaps even from the get-go), instead of placing before this court the circumstances it believed warranted the minor participant reduction at the outset. The failure to explain this about-face certainly brings into play the integrity of the plea bargaining process.

Third, the facts as set forth in the PSR seem to help rather than hurt Dawson. The extensive drug conspiracy involved at least twenty-five people, and Dawson only was used from time-to-time by Beaufort as a driver and delivery person. The parties agree that Dawson was unreliable in providing these services. Dawson was substantially less culpable than McCall, Hall, and Beaufort, and arguably, he was substantially less culpable than McCall and Hall's clients who were "major distributors and/or suppliers." (J.A. 98). The critical inquiry in determining whether a defendant is entitled to an adjustment for his role in the offense is "not just whether the defendant has done fewer bad acts than his co-defendants, but whether the defendant's conduct is material or essential to committing the offense." *United States v. Pratt*, 239 F.3d 640, 646 (4th Cir. 2001) (citation and internal quotation marks omitted). Here, even though the district court in the exercise of its discretion was not obligated to award the minor participant reduction even if the government had recommended one, the record simply does not reflect that it is likely Dawson would not have received the minor participant reduction had the gov-

ernment made good on its promise, because the record does not reflect that Dawson provided material and/or essential assistance, as Beaufort was quite capable of using others to assist him in his distribution efforts. Put another way, Dawson, who essentially was no more than a part-time drug courier, has demonstrated a reasonable probability that the outcome of his sentencing would have been different had the government made the appropriate recommendation. *Cf. Lovelace*, 565 F.3d at 1088 (finding no prejudice, post-*Puckett*, where the record did not indicate that, but for the government's breach of the plea agreement, the district court would not have adopted the PSR's higher, recommended base offense level); *see also United States v. White*, 875 F.2d 427, 434 (4th Cir. 1989) (noting that "whether a drug courier is entitled to a downward adjustment depends on the particular facts surrounding his involvement").

With regard to the fourth prong of the plain error standard, the prong "is meant to be applied on a case-specific and fact-intensive basis." *Puckett*, 129 S. Ct. at 1433. Clearly, when the government breaches a plea agreement, "the integrity of the system may be called into question, but there may well be countervailing factors in particular cases." *Id.* In the plea agreement in *Puckett*, the government agreed Puckett had demonstrated an acceptance of responsibility. *Id.* at 1426. After he entered into the plea agreement and while awaiting sentencing, Puckett engaged in a scheme to defraud. *Id.* at 1427. In holding that the fourth prong of the plain error standard was not met on the defendant's forfeited claim that the government breached the plea agreement by arguing at sentencing that the defendant was not entitled to an acceptance of responsibility reduction, the Court observed that, because the defendant "obviously did not cease his life of crime, receipt of a sentencing reduction for acceptance of responsibility would have been so ludicrous as itself to compromise the public reputation of judicial proceedings." *Id.* at 1433.

Unlike *Puckett*, we see no countervailing factors in the present case that would allow the government to renege on its

promise to make a minor participant recommendation for Dawson. The government argues that two such factors are present. First, the government suggests that both counsel for Dawson and the AUSA recognized that Dawson was not a minor participant because of the "possibility on this record that the Government and Defendant's counsel had agreed that the reduction was unlikely to be granted by the district court." Appellee's Supplemental Br. at 10. The factual support for this argument is that neither counsel for Dawson nor the AUSA sought the minor participant reduction at sentencing and counsel for Dawson stated at sentencing that Dawson was not a leader or organizer. The government suggests this so-called side agreement (which would have violated the provision in the plea agreement that required all modifications be in writing) and counsel for Dawson's statement at sentencing mean that the breach of the plea agreement did not affect the fairness, integrity, or public reputation of judicial proceedings.

The government's argument misses the mark. It is rank speculation to conclude that there existed between counsel for Dawson and the AUSA an agreement that Dawson did not qualify for the minor participant reduction. In fact, it is more plausible to conclude that no such agreement existed given the provision in the plea agreement that required all modifications to be in writing. Moreover, counsel for Dawson's statement that Dawson was not a leader or organizer does not necessarily mean that Dawson's counsel did not believe that Dawson was not a minor participant, as by definition, a minor participant is not a leader or organizer.

The second countervailing factor pressed by the government is that the sentence imposed by the district court, 70 months' imprisonment, nevertheless is within the sentencing range that would have applied had Dawson received the minor participant reduction. However, this fact does not prevent us from exercising our discretion to notice the error. The district court sentenced Dawson at the low-end of the sentenc-

ing range even though the AUSA stressed that Dawson was a critical component to the conspiracy. Had the AUSA made the argument he was obligated to make, it is reasonably probable that the district court would have imposed a sentence below the sentence of 70 months. *Cf. United States v. Price*, 516 F.3d 285, 289 n.28 (5th Cir. 2008) (noting that the district court's imposition of the minimum term under the incorrect range demonstrated at least a reasonable probability that the district court would have imposed a lesser sentence if it had properly applied the Guidelines).

## III

We have long recognized that "a government that lives up to its commitments is the essence of liberty under law, [and] the harm generated by allowing the government to forego its plea bargain obligations is one which cannot be tolerated." *Peglera*, 33 F.3d at 414. Notwithstanding this recognition, per *Puckett*, criminal defendants have an affirmative obligation to raise appropriate objections in the district court, lest they be subjected to the rigorous plain error standard on direct review. Here, appropriate objections would have saved a lot of time and judicial resources. However, under the unique circumstances of this case, we agree with Dawson that he has met his burden of establishing plain error. Accordingly, we vacate the sentence and remand for resentencing before a different district judge. *See United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1997) (directing remand for resentencing before a different sentencing judge after breach of plea agreement).[5]

---

[5]We also note the district court erred in imposing a period of supervised release in excess of five years. For a first offender like Dawson, § 841(b)(1)(B) provides for a sentence of between five and forty years imprisonment and "at least four years" of supervised release. 21 U.S.C. § 841(b)(1)(B). Because the maximum term of imprisonment exceeds twenty-five years, but is less than life, Dawson's offense is classified as a Class B felony. 18 U.S.C. § 3559(a)(1), (2). The maximum period of supervised release authorized for a Class B felony is five years. *Id.*

*VACATED AND REMANDED FOR RESENTENCING*

---

§ 3583(b)(1); *see also United States v. Good*, 25 F.3d 218, 221 (4th Cir. 1994) ("Although there is no maximum period of supervised release expressed in the statutory language of 21 U.S.C. § 841(b)(1)(B), . . . the maximum period of supervised release for a first offender found guilty of this Class B felony is five years.").