PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

LORENZO MARTEZ LEWIS,

*Defendant-Appellant.*

No. 09-4467

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Louise W. Flanagan, Chief District Judge.
(7:05-cr-00142-FL-1)

Argued: December 10, 2010

Decided: February 2, 2011

Before NIEMEYER and KING, Circuit Judges,
and Patrick Michael DUFFY,
Senior United States District Judge
for the District of South Carolina, sitting by designation.

Vacated and remanded by published opinion. Judge King
wrote the opinion, in which Judge Niemeyer and Senior Judge
Duffy joined.

## COUNSEL

**ARGUED:** Jennifer Haynes Rose, LAW OFFICE OF JENNI-
FER HAYNES ROSE, Raleigh, North Carolina, for Appel-

lant. Kristine L. Fritz, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** George E. B. Holding, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

## OPINION

KING, Circuit Judge:

Lorenzo Martez Lewis seeks relief from the sentence imposed on him in the Eastern District of North Carolina on his conviction for witness tampering, in contravention of 18 U.S.C. § 1512(b)(1). After entering into a "Memorandum of Plea Agreement" with the government (the "Plea Agreement"), Lewis was sentenced to forty-six months in prison, to be served consecutively to the state sentence he was then serving. Lewis contends on appeal that the district court's imposition of a consecutive sentence contravened the Plea Agreement, because the parties had agreed, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, that Lewis's sentence "shall be served concurrent with" his state sentence. Plea Agreement ¶ 5.[1] As explained below, we agree with Lewis that the Plea Agreement was contravened. We therefore vacate the judgment and remand.

I.

In June of 2008, a grand jury in the Eastern District of North Carolina returned a three-count superseding indictment against Lewis. The indictment alleged a firearms charge, in violation of 18 U.S.C. § 922(g)(1) ("Count One"), plus two charges of witness tampering, in violation of § 1512(b)(1)

---

[1]The Plea Agreement can be found at J.A. 49-53. (Citations herein to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.)

("Count Two" and "Count Three").**[2]** On December 5, 2008, Lewis and the government entered into the Plea Agreement underlying this appeal, pursuant to which Lewis agreed to plead guilty to Count Two. Several provisions of the Plea Agreement supply essential predicate facts for this appeal.

## A.

The Plea Agreement's Paragraph 5 is critical to this appeal, and provides as follows:

> 5.    The parties agree that the sentence of imprisonment *shall* be served concurrent with the state sentence [Lewis] is currently serving and further agree that the North Carolina Department of Corrections prison is the appropriate facility for [Lewis] to begin serving his federal sentence.

Plea Agreement ¶ 5 (emphasis added) (the "concurrent sentence provision"). In Paragraph 6, the parties agreed to a downward adjustment for Lewis's acceptance of responsibility, in a provision that the Plea Agreement specifies as "not binding on the Court." *Id.* ¶ 6. In another notable provision, Paragraph 4.a, the government agreed to dismiss the remaining two counts of the indictment. *Id.* ¶ 4.a. Paragraph 1 of the Plea Agreement specified that the "Memorandum of Plea Agreement" constitutes the parties' entire agreement. *Id.* ¶ 1.**[3]**

---

[2]Lewis had been previously indicted and tried on the charges contained in Counts One and Two of the superseding indictment. The trial resulted in a mistrial, however, and the superseding indictment was thereafter returned, adding Count Three. The superseding indictment is the operative indictment for this appeal.

[3]Pursuant to Paragraph 1, the breadth of the Plea Agreement was characterized as follows:

> 1.    This Memorandum constitutes the full and complete record of the Plea Agreement. There are no other agreements between the parties in addition to or different from the terms herein.

Plea Agreement ¶ 1.

### B.

On December 9, 2008, the district court conducted the Rule 11 plea hearing in this case, at which the Plea Agreement was tendered to the court and Lewis entered his guilty plea to Count Two. In the Rule 11 colloquy, the court explained to Lewis that it was not bound by any "recommendation" in the Plea Agreement, and asked whether Lewis understood that he might be sentenced more severely than anticipated. J.A. 27. The court also advised Lewis that "there are some types of plea agreements that the defendant would be given a chance, if the court's not inclined to accept it, to withdraw. And if it's not withdrawn, the Court would go forward with sentencing." *Id.* at 28. Nevertheless, the court subsequently inquired whether Lewis understood that, if his plea was accepted, he could not "withdraw or take it back." *Id.* at 33. Additionally, the court asked Lewis if he had read and understood "the meaning of the words and phrases that make up" the Plea Agreement and that it represents "any and all agreements that you've got with the United States of America." *Id.* at 35-36. Lewis responded affirmatively to the court's inquiries, and pleaded guilty to Count Two. The court then accepted Lewis's guilty plea to Count Two, stating on the record "I'll conditionally accept the plea agreement tendered here today." *Id.* at 44. Indeed, the judge personally signed the Plea Agreement, confirming that it was "[c]onditionally approved." *Id.* at 53. There was no specific discussion of the concurrent sentence provision.

On March 11, 2009, the probation officer submitted Lewis's presentence report (the "PSR") to the district court, making recommendations for calculating the advisory Guidelines range. The PSR related, inter alia, that the parties had agreed to a downward adjustment under the Guidelines for acceptance of responsibility, and had also "agreed that the sentence of imprisonment will be served concurrent with the state sentence [Lewis] is currently serving." J.A. 80.

On May 12, 2009, five months after the Rule 11 plea hearing, the district court conducted Lewis's sentencing hearing. At the hearing, the government complied with its obligation to recommend that Lewis receive a three-point reduction for acceptance of responsibility, and the court accepted that recommendation and fixed his advisory Guidelines range at 37 to 46 months (as recommended by the PSR). After giving Lewis and his lawyer, as well as the government, an opportunity to be heard, the court adopted the PSR and sentenced Lewis to forty-six months in prison, to be served consecutively to the state sentence he was then serving. Importantly, the court explained that,

> I am fashioning a sentence that runs the Court's imposition in this case of a 46-month term of incarceration in the Federal Bureau of Prisons consecutive to the sentence — *and this is over the defendant's objection, I know* — consecutive to the state sentence.

J.A. 64 (emphasis added). After the sentence was announced, Lewis's lawyer again objected — or at least sought to object — to the consecutive aspect of the sentence, and the following exchange occurred.

> Mr. Speaks [Lewis's lawyer]: Judge, do you recall that the plea agreement includes language about —
>
> The Court: I am very cognizant of the plea process, and, in this case, it is unusual for me not to adhere to what was agreed to, as it is not binding on the court. Are you making an argument that it is binding?
>
> Mr. Speaks: No, your Honor. I understand that it's not binding.
>
> The Court: Okay. I have a responsibility to impose a sentence that is sufficient, but not greater than nec-

> essary, to comply with the purposes of sentencing. And it's the Court's determination that this consecutive sentence accomplishes that purpose. And, for that reason, *I am differing from the agreement of the parties in imposing the sentence that I've imposed.*

*Id.* at 66-67 (emphasis added).

At the sentencing hearing, the district court did not expressly either accept or reject the Plea Agreement, and it did not address the question of whether Lewis should have the opportunity to withdraw his guilty plea. The Assistant United States Attorney stood mute during the defense lawyer's exchange with the court concerning its consecutive sentence and, when asked by the court, "[is there] anything the government wants to bring to my attention," she simply replied: "No, your Honor." J.A. 67. Pursuant to the Plea Agreement, Counts One and Three were dismissed by the court and, on May 12, 2009, the judgment was entered accordingly.

On May 18, 2009, Lewis filed a timely notice of appeal. We possess jurisdiction of his appeal pursuant to the provisions of 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## C.

Five months after the appeal was filed, on October 16, 2009, Lewis's lawyer filed an *Anders* brief with our Court, expressing his belief that there were no meritorious issues to present, but recommending that "the Court should consider" whether the district court had erred in sentencing Lewis to a consecutive term of imprisonment. *Anders* Br. of Appellant 8.[4]

---

[4]*See Anders v. California*, 386 U.S. 738, 744 (1967) (instructing that, if appointed counsel deems appeal to be wholly frivolous, he or she should so advise court and request permission to withdraw, but accompany such request with brief referring to anything in record that might arguably support appeal).

The *Anders* brief discussed a previously undisclosed teleconference of December 5, 2008 (the date of the Plea Agreement and four days before the plea hearing) among the defense lawyer, the prosecutor, and the judge, and asserted that the judge had informed "counsel for Mr. Lewis and counsel for the United States that even if the plea agreement was accepted by the court, the sentencing agreement and any recommendations would not be binding." *Id.* at 7-8. Such a conference is not otherwise reflected in the record. Contemporaneous with the *Anders* brief, Lewis's lawyer sought to withdraw from this appeal.

On November 9, 2009, in response to the *Anders* brief, Lewis made a pro se supplemental submission to this Court, asserting that "[t]he U.S. Attorney agreed in my plea that the Federal sentence should [run] concurrent with my State Sentence," and that "the only reason I took the plea is because I was told it would [run] concurrent." *Pro Se* Br. of Appellant 1. On May 10, 2010, we granted the lawyer's motion to withdraw and appointed replacement counsel for Lewis. In a subsequent order of the same date, we directed his new counsel to pay "specific attention" to "whether the district court's imposition of a consecutive sentence was appropriate." *United States v. Lewis*, No. 09-4467 (4th Cir. May 10, 2010). The matter was thereafter briefed and argued, and it is now ripe for decision.

## II.

### A.

When a claim of breach of a plea agreement has been preserved, "we review the district court's factual findings for clear error and its application of principles of contract interpretation de novo." *United States v. Dawson*, 587 F.3d 640, 645 (4th Cir. 2009). Because a sentencing court's failure to comply with Rule 11 is evaluated under a harmless error standard, we will only vacate a sentence "if the trial court's viola-

tions of Rule 11 affect the defendant's substantial rights." *United States v. Goins*, 51 F.3d 400, 402 (4th Cir. 1995) (internal quotation marks omitted); *see also* Fed. R. Crim. P. 11(h). We review an alleged error that was not properly preserved for plain error only. *See United States v. Rooks*, 596 F.3d 204, 210 (4th Cir. 2010).

## B.

As a threshold matter, we must identify the proper standard of review for Lewis's sentencing contention. The government maintains that his contention — that the consecutive sentence contravened the Plea Agreement — is not reviewable at all or, at most, subject to review for plain error only. On the other hand, if Lewis's sentencing contention was properly preserved, it must be reviewed for harmless error. The resolution of this issue turns on the contents of the record of the sentencing hearing.

At sentencing, the district court specifically acknowledged that, in imposing a consecutive sentence on Lewis, it was doing so "over the defendant's objection." J.A. 64. Indeed, Lewis's counsel sought to object again, but the court interjected and advised that it was "very cognizant of the plea process, and . . . it is unusual for me to not adhere to what was agreed to, as it is not binding on the Court." *Id.* at 66.

On appeal, the government asserts that the lawyer's statement to the district court that the Plea Agreement was "not binding" served to waive any objection to the consecutive sentence and, thus, forecloses any appellate review. Although Lewis's lawyer might have explained his position more fully, he was, in any event, quite correct. The court was not required to run Lewis's sentence concurrently; it was, as explained below, entirely free to reject the Plea Agreement that it had previously "conditionally accept[ed]." J.A. 44. Under the circumstances, Lewis sufficiently preserved his appellate con-

tention, and it is properly reviewed for harmless — rather than plain — error.

### III.

In his appeal, Lewis contends that the concurrent sentence provision was binding on the district court, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, *if* the court accepted the Plea Agreement and his guilty plea on Count Two.[5] Lewis also contends that, when the sentencing court implicitly rejected the concurrent sentence provision and instead imposed a consecutive sentence, it was required, pursuant to Rule 11(c)(5), to "give [him] an opportunity to withdraw" his guilty plea.[6] Lewis asserts that, because the court did not accord him that opportunity, his sentence is invalid and must be vacated. In response, the government asserts that the sentencing court did not err, and that Lewis's sentence should be affirmed. The government maintains that

---

[5]Rule 11(c)(1)(C) provides, in pertinent part, that "the plea agreement may specify that an attorney for the government will . . . agree that a specific sentence . . . is the appropriate disposition of the case." The Rule specifies that "such a recommendation or request binds the court once the court accepts the plea agreement."

[6]Rule 11(c)(5) spells out in detail the steps a sentencing court is obliged to follow if it decides to reject a plea agreement:

> If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):
>
> (A) inform the parties that the court rejects the plea agreement;
>
> (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
>
> (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

Fed. R. Crim. P. 11(c)(5).

the parties never intended or understood the concurrent sentence provision to be an agreement for a specific sentence under Rule 11(c)(1)(C). Our resolution of this appeal thus turns primarily on whether the concurrent sentence provision constitutes an agreement for a specific sentence under Rule 11(c)(1)(C).

### A.

The plea agreement process is an essential aspect of the administration of criminal justice in our scheme of government. Criminal defendants and the prosecuting authorities utilize such agreements, as a matter of course, to dispose of the vast majority of all federal criminal cases. As a result, the courts have a vital interest in assuring that such agreements are adhered to and handled properly. *See United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986) (discussing constitutional and supervisory concerns implicated in plea agreement process and judiciary's interest in administration of criminal justice).

A plea agreement is essentially a contract between an accused and the government. *See Puckett v. United States*, 129 S. Ct. 1423, 1430 (2009). As a result, the interpretation of a plea agreement "is rooted in contract law, and . . . each party should receive the benefit of its bargain." *United States v. Dawson*, 587 F.3d 640, 645 (4th Cir. 2009) (internal quotation marks omitted). It is elementary that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971); *see also Dawson*, 587 F.3d at 645 (quoting *Santobello*); *United States v. Gonczy*, 357 F.3d 50, 53 (1st Cir. 2004) ("[A] defendant entering into a plea agreement with the government undertakes to waive certain fundamental constitutional rights; because of that waiver, the government is required to meet the most meticulous standards of both promise and performance." (internal

quotation marks omitted)). The government is only bound, however, by the promises that were actually made in inducing a guilty plea. *See Dawson*, 587 F.3d at 645.

Our distinguished former colleague, Judge Donald Russell, writing on the matter some fifteen years ago, explained the principles governing plea agreements in the following terms: "Because a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea agreement, our analysis of the plea agreement or breach thereof is conducted with greater scrutiny than in a commercial contract." *United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1996). As a result, the government is held to "a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements." *United States v. Wood*, 378 F.3d 342, 348 (4th Cir. 2004) (internal quotation marks omitted). The breach of a promise made to induce a defendant to enter a guilty plea — and thereby waive important constitutional rights — harms not only the defendant, but, as Judge Russell correctly emphasized, involves "the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." *McQueen*, 108 F.3d at 66 (internal quotation marks omitted); *see also United States v. Peglera*, 33 F.3d 412, 414 (4th Cir. 1994) (Wilkinson, J.) ("Because a government that lives up to its commitments is the essence of liberty under law, the harm generated by allowing the government to forego its plea bargain obligations is one which cannot be tolerated."). With these principles in mind, we turn to the issue presented in this appeal.

## B.

### 1.

Rule 11 of the Federal Rules of Criminal Procedure governs the plea process in the federal courts, and, to properly

assess this appeal, an understanding of Rule 11(c) (entitled "Plea Agreement Procedure") is essential. First, Rule 11(c)(1) identifies three types of inducements that can be included in a plea agreement, and the distinctions between such inducements is of vital importance. Under that provision, a "plea agreement may specify that an attorney for the government will" do the following:

> (A) not bring, or will move to dismiss, other charges [(commonly called a "type A provision")];

> (B) recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court) [(commonly called a "type B provision")]; or

> (C) *agree that a specific sentence* or sentencing range *is the appropriate disposition of the case*, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement) [(commonly called a "type C provision")].

Fed. R. Crim. P. 11(c)(1) (emphasis added); *see also United States v. Hyde*, 520 U.S. 670, 675 (1997). Even if a sentencing court accepts a plea agreement, the court is not bound by recommendations that are properly characterized as type B provisions. On the other hand, if the court accepts a plea agreement, it is thereby bound by any type A or type C provisions that are contained therein.

Nevertheless, a district court is not obliged to accept a particular plea agreement between the government and an accused, as it always has the authority to either accept or

reject any agreement. *See* Fed. R. Crim. P. 11(c)(5); *Wood*, 378 F.3d at 348. If the court accepts a guilty plea, however, and thereafter decides to reject the underlying plea agreement that contains "provisions of the type specified in Rule 11(c)(1)(A) or (C)," it must, on the record, comply with Rule 11(c)(5). That is, the court must (1) advise the parties that it is rejecting the plea agreement, (2) afford the defendant an opportunity to withdraw his guilty plea, and (3) advise the defendant that, if his plea is not withdrawn, he may be sentenced more severely than contemplated by the plea agreement.

2.

Moving to the government's contention that the parties never intended or understood the concurrent sentence provision to be a type C provision, that contention is readily rejected. The concurrent sentence provision is drawn in mandatory and plain terms — "[t]he parties agree that the sentence of imprisonment shall be served concurrent with the state sentence." Plea Agreement ¶ 5. As such, there is no support for the proposition that the concurrent sentence provision was a mere recommendation to the sentencing court. The Plea Agreement itself shows that the prosecutors knew how to draft such a recommendation — Paragraph 6 of the Plea Agreement relates to a "downward adjustment . . . for acceptance of responsibility" that was "not binding on the Court," and is therefore a type B provision containing a recommendation. *Id.* ¶ 6.

Notably, the judge actually signed the Plea Agreement after the guilty plea was accepted, stating in the plea hearing and on the face of the Plea Agreement that it was being "conditionally approved." J.A. 44, 53. Such a conditional approval provides strong support for the proposition that the Plea Agreement was understood to contain a type C provision. *See* Fed. R. Crim. P. 11(c)(3)(A) ("To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the

court may accept the agreement, reject it, or *defer a decision until the court has reviewed the [PSR]*." (emphasis added)). After considering the PSR, however, the sentencing court failed to expressly either accept or reject the Plea Agreement. Unquestionably, however, the court implicitly withdrew its conditional approval of the Plea Agreement by sentencing Lewis to a consecutive sentence of forty-six months.

In rejecting the concurrent sentence provision, however, the district court was obliged to afford Lewis an opportunity to withdraw his guilty plea, and it erroneously failed to do so. *See* Fed. R. Crim. P. 11(c)(5). As a corollary to this sentencing defect, it is surprising that the prosecutor failed to correct the court's misunderstanding of the concurrent sentence provision. The government had an affirmative duty to fulfill its obligations under the Plea Agreement. As Judge Russell explained in *McQueen*, the "Government's failure to argue the terms of the . . . plea agreement to the district court at the sentencing hearing constitute[s] a breach [thereof]." *See* 108 F.3d at 66.

The government's contention that the parties actually intended and understood the concurrent sentence provision to be a mere recommendation is — put mildly — nearly frivolous. Such an understanding runs counter to the plain and express terms of the Plea Agreement.[7] Indeed, we have rejected similar contentions predicated on undocumented "understandings" or in conflict with the terms of a plea agreement. *See United States v. Cohen*, 459 F.3d 490, 495 (4th Cir. 2006). The prosecutor drafted the Plea Agreement, and we

---

[7]The foregoing contention is apparently predicated, at least to some extent, on the alleged teleconference between counsel and the sentencing judge, initially referred to in the *Anders* brief. We decline to consider the alleged teleconference for several reasons: First, there is no indication in the record that such a conference occurred; second, the Plea Agreement constitutes the entire agreement; and finally, Rule 11(c)(1) provides "[t]hat the court must not participate" in plea negotiations.

have no basis for rewriting it to comport with what the government now desires it to mean.

Although a sentencing error occurred in this case, we will not correct such an error if it was harmless. An error is harmless if we are able to say, with fair assurance, that it did not affect the defendant's substantial rights. *See* Fed. R. Crim. P. 11(h), 52(a); *see also United States v. Brooks*, 111 F.3d 365, 371 (4th Cir. 1997). "A defendant's substantial rights are affected if the error 'affected the outcome of the district court proceedings.'" *Dawson*, 587 F.3d at 645 (quoting *Puckett*, 129 S. Ct. at 1429). In these circumstances, Lewis did not secure the benefit to which he was entitled under the concurrent sentence provision — a sentence that ran concurrently with his state sentence — and the error affected his substantial rights.[8]

## IV.

Pursuant to the foregoing, we vacate the judgment and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*

---

[8]Finally, the government seeks dismissal of Lewis's appeal on the basis of the appeal waiver in the Plea Agreement. We will not enforce such a waiver, however, when the government has failed to comply with its plea agreement obligations. *See Dawson*, 587 F.3d at 644 n.4; *Cohen*, 459 F.3d at 495. The concurrent sentence provision is a type C provision, and when the district court rejected the Plea Agreement by imposing a consecutive sentence, Lewis was entitled to an opportunity to withdraw his plea. *See* Fed. R. Crim. P. 11(c)(5). The government's obligation in that circumstance included the correction of the court's misunderstanding about the concurrent sentence provision. *See McQueen*, 108 F.3d at 66 ("The Government's failure to argue the terms of the . . . plea agreement to the district court at the sentencing hearing constitute[s] a breach [thereof]."). Thus, we decline to enforce the appeal waiver.