**UNPUISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-4780**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

       v.

ROBERT CLAUDE CATHEY,

              Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Anderson. Henry M. Herlong, Jr., Senior District Judge. (8:13-cr-01110-HMH-1)

Submitted: June 19, 2015          Decided: July 2, 2015

Before WILKINSON, NIEMEYER, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

William Glenn Yarborough, III, LAW OFFICE OF WILLIAM G. YARBOROUGH, III, Greenville, South Carolina, for Appellant. William N. Nettles, United States Attorney, Jamie Lea Nabors Schoen, Assistant United States Attorney, Greenville, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Robert Claude Cathey was convicted, following a jury trial conducted by a magistrate judge, of illegally baiting a field, in violation of the Migratory Bird Treaty Act, 16 U.S.C. §§ 704(b)(2), 707(c) (2012); 50 C.F.R. §§ 20.11, 20.21(i) (2013). Cathey appealed his conviction to the district court, which affirmed. He now appeals the district court's order. Finding no error, we affirm.

A district court reviewing a trial conducted by a magistrate judge applies the same standards an appellate court applies in assessing a criminal judgment imposed by a district court. United States v. Bursey, 416 F.3d 301, 305 (4th Cir. 2005); see Fed. R. Crim. P. 58(g)(2)(D). In turn, our "review of a magistrate court's trial record is governed by the same standards as was the district court's appellate review." Bursey, 416 F.3d at 305–06.

I.

Cathey first argues that the magistrate judge abused his discretion when he allowed into evidence testimony that Cathey had been previously charged with illegal baiting. We review evidentiary rulings for abuse of discretion. United States v. Benkahla, 530 F.3d 300, 309 (4th Cir. 2008). A magistrate judge abuses his discretion by acting "arbitrarily or irrationally" in admitting evidence. Id. (internal quotation marks omitted).

2

To be admissible under Rule 404(b), evidence must be "(1) relevant to an issue other than character; (2) necessary; and (3) reliable." United States v. Siegel, 536 F.3d 306, 317 (4th Cir. 2008) (internal quotation marks omitted). "Rule 404(b) is . . . an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." United States v. Young, 248 F.3d 260, 271-72 (4th Cir. 2001) (internal quotation marks omitted).

"Evidence sought to be admitted under Rule 404(b) must also satisfy" Fed. R. Evid. 403. Siegel, 536 F.3d at 319. "Rule 403 only requires suppression of evidence that results in unfair prejudice—prejudice that damages an opponent for reasons other than its probative value, for instance, an appeal to emotion, and only when that unfair prejudice substantially outweighs the probative value of the evidence." United States v. Mohr, 318 F.3d 613, 619-20 (4th Cir. 2003) (internal quotation marks and alteration omitted).

"To be relevant, evidence need only to have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." United States v. Aramony, 88 F.3d 1369, 1377 (4th Cir. 1996) (internal quotation marks omitted). The greater the similarity between Rule 404(b) evidence and the fact in question, the more relevant the Rule

404(b) evidence becomes. United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997). "Evidence is reliable for purposes of Rule 404(b) unless it is so preposterous that it could not be believed by a rational and properly instructed juror." Siegel, 536 F.3d at 319 (internal quotation marks omitted).

We discern no abuse of discretion in the magistrate judge's ruling. Cathey challenges the relevancy and reliability of the evidence. The prior charge, which was for the same offense under the same statutes and regulations, tended to make it more probable that Cathey was aware of the regulations on farming applicable when hunting was anticipated. Thus, this evidence was relevant to Cathey's knowledge and intent. Further, we conclude that the testimony was reliable.

Finally, Cathey asserts that the evidence was unfairly prejudicial because the testifying officer misstated that Cathey pleaded guilty to the prior charge. However, this portion of the testimony occurred outside the presence of the jury and therefore could not have caused confusion. Moreover, the magistrate judge limited the Government's evidence to the fact of the prior charge and gave two limiting instructions, including one immediately after the officer's testimony.

Alternatively, Cathey argues that introducing evidence that he was charged with illegal baiting violated the pretrial diversion agreement related to that charge. Other circuits have

recognized that "[a] pretrial diversion agreement is analogous to a plea bargain agreement," and thus is interpreted under the same standards. United States v. Harris, 376 F.3d 1282, 1287 (11th Cir. 2004); cf. United States v. Gillion, 704 F.3d 284, 292-93 (4th Cir. 2012) (interpreting proffer agreement as contract). "It is well-established that the interpretation of plea agreements is rooted in contract law, and that each party should receive the benefit of its bargain." United States v. Dawson, 587 F.3d 640, 645 (4th Cir. 2009) (internal quotation marks omitted). "Accordingly, in enforcing plea agreements, the government is held only to those promises that it actually made, and the government's duty in carrying out its obligations under a plea agreement is no greater than that of fidelity to the agreement." Id. (internal quotation marks omitted).

While Cathey argues that the Government agreed not to use the fact that he was charged against him, the agreement states only that it bars the use of the agreement or any documents related to Cathey's participation in the program. Here, the Government introduced only the fact that Cathey had previously been charged with illegal baiting, not the agreement or any information related to Cathey's participation in the pretrial diversion program. We therefore conclude that the magistrate judge did not abuse his discretion in allowing the evidence.

5

Cathey next challenges the magistrate judge's ruling excluding his proffered expert testimony. We review for abuse of discretion a decision to exclude expert testimony. United States v. Garcia, 752 F.3d 382, 390 (4th Cir. 2014). Expert testimony is admissible if it is reliable and relevant. PBM Products, LLC v. Mead Johnson & Co., 639 F.3d 111, 123 (4th Cir. 2011). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

The Secretary of the Interior has promulgated two exceptions to the prohibition on hunting of migratory birds, permitting such hunting, with exceptions not relevant here, on or over "lands or areas where seeds or grains have been scattered solely as the result of a normal agricultural planting, harvesting, post-harvest manipulation or normal soil stabilization practice," and "where grain or other feed has been distributed or scattered . . . solely as the result of a normal agricultural operation." 50 C.F.R. § 20.21(i)(1)(i), (2). The regulations further limit "normal agricultural planting, harvesting, or post-harvesting manipulation" and "normal agricultural operation" to those practices "conducted in accordance with official recommendations of State Extension

Specialists of the Cooperative Extension Service of the U.S. Department of Agriculture." 50 C.F.R. § 20.11(g), (h).

We discern no abuse of discretion in the magistrate judge's decision to exclude Cathey's proffered expert witness. The proffered expert, a local farmer, testified that broadcasting seeds, the method Cathey contended he used when he planted the field, was an accepted farming practice in the community. The witness testified, however, that he was not familiar with the relevant Extension Service recommendations regarding the planting of wheat crops if the hunting of migratory birds was anticipated. Thus, the expert's testimony was not relevant to whether Cathey planted his wheat crop in accordance with the Extension Service recommendations.

Cathey contends that United States v. Boynton, 63 F.3d 337, (4th Cir. 1995), permits local farmers to testify about accepted community farming practices. We conclude that Boynton is not applicable here because the regulations have been amended to "apply an objective standard in determining whether the planting was done in accordance with official recommendations." United States v. Strassweg, 143 F. App'x 665, 666 (6th Cir. 2005) (internal quotation marks omitted); cf. Falk v. U.S. ex rel. Dep't of Interior, 452 F.3d 951, 954-55 (8th Cir. 2006) (examining plaintiffs' actions in light of Extension Service Guidelines).

7

III.

Finally, Cathey challenges the sufficiency of the evidence against him.  He first contends that the Government failed to prove that he was not farming under either exception because the Extension Guidelines were merely recommendations.  Cathey further argues that incorporating the Extension Service Guidelines shifts the burden of proof to the defendant.

A defendant challenging the sufficiency of the evidence faces a heavy burden.  United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997).  The jury verdict must by sustained when "there is substantial evidence in the record, when viewed in the light most favorable to the government, to support the conviction."  United States v. Jaensch, 665 F.3d 83, 93 (4th Cir. 2011) (internal quotation marks omitted).  "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."  Id. (alteration and internal quotation marks omitted).  "Reversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear."  Beidler, 110 F.3d at 1067 (internal quotation marks omitted).

In order to establish that Cathey was guilty of baiting a field for the purpose of hunting migratory birds, the Government was required to prove that Cathey "place[d] or direct[ed] the

8

placement of bait on or adjacent to an area for the purpose of causing, inducing, or allowing any person to take or attempt to take any migratory game bird by the aid of baiting on or over the baited area." 16 U.S.C. § 704(b)(2) (2012). An area is considered "baited" when grain that "could serve as a lure or attraction for migratory game birds" is "placed, exposed, deposited, distributed, or scattered." 50 C.F.R. § 20.11(j). The area "remain[s] a baited area for ten days following the complete removal" of the grain. Id.

As discussed above, hunting of migratory game birds is permitted on or over "lands or areas where seeds or grains have been scattered solely as the result of a normal agricultural planting, harvesting, post-harvest manipulation or normal soil stabilization practice," and "where grain or other feed has been distributed or scattered . . . solely as the result of a normal agricultural operation." 50 C.F.R. § 20.21(i)(1)(i), (2). In order to fall within these exceptions, the practices must be "conducted in accordance with official recommendations of State Extension Specialists of the Cooperative Extension Service of the U.S. Department of Agriculture." 50 C.F.R. § 20.11(g), (h).

Cathey argues that incorporating these recommendations as elements of the offense shifted the burden of proof from the Government, requiring him to prove that he planted his crops in accordance with the recommendations. We conclude that the

9

burden here was properly placed on the Government. The magistrate judge instructed the jury on multiple occasions that Cathey was presumed innocent, that he had no burden to produce any evidence, and that it was the Government's burden to prove the elements of the offense beyond a reasonable doubt. In explaining the elements, the magistrate judge included the two exceptions predicated on the Clemson Extension Guidelines.

Moreover, we conclude that substantial evidence supports Cathey's conviction. The Government's Extension Guidelines expert testified that the wheat field failed to meet the recommendations in four areas: seed germination rate, seed planting depth, seeding density, and the seed bed. The expert further testified that top sowing was not a recommended practice. The investigating officers observed a large quantity of uncovered wheat seeds on both plowed and unplowed sections of the field two days prior to and on the morning of the hunt.

Cathey further argues that the Government failed to prove that the birds killed during the hunt were in fact mourning doves. "Migratory game birds" is defined as "those migratory birds included in the terms of conventions between the United States and any foreign country for the protection of migratory birds," including the birds listed in 50 C.F.R. § 10.13. 50 C.F.R. § 20.11(a). Mourning doves are a listed migratory game bird. 50 C.F.R. § 10.13(c)(1) (2013); see id. § 10.13(b) ("The

10

purpose [of this list] is to inform the public of the species protected by regulations that enforce the terms of the MBTA.").

We conclude that the Government proved that Cathey baited the field to allow the hunters to take or attempt to take mourning doves. Cathey stipulated that he leased the field to the hunter so that the hunter could use the field to hunt mourning doves, and that the hunter informed Cathey he planned to conduct a hunt on November 17, 2012. He also stipulated that hunters hunted mourning doves over the field on that date.

## IV.

Accordingly, we affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the material before this court and argument will not aid the decisional process.

AFFIRMED